This appeal involves an action for fraudulent misrepresentation. The trial court granted defendant's motion for directed verdict at the close of plaintiff's evidence.
In February of 1976 James M. Ratledge worked for H W, Inc., on a part-time basis cutting pulpwood. On February 12, 1976, he was struck in the head by a tree while on the job for H W. Ratledge was knocked out by the blow, but was revived and then taken to a hospital emergency room. He was treated and released, and although he had a stiff neck and headaches, he continued working for H W, Inc., for several weeks or months after the accident. His supervisor, L.J. Wheeles, told him that H W, Inc., would pay for his medical bill, but nothing was said at the time about workmen's compensation.
Ratledge continued working on lighter duty jobs until around October. Ratledge also worked for Uniroyal, his primary employer, and in October of 1976, he went to a Uniroyal company doctor. He was referred to a neurologist, Dr. Robert Burney, whom he saw on November 15, 1976. Dr. Burney examined him and told him he would need to refrain from working for six weeks to three months and would possibly need surgery.
Ratledge testified that after this visit to Dr. Burney, he inquired as to coverage by H W, Inc.:
 "So, I called Mr. Wheeles when I got home, and asked him if I was still covered by workmen's compensation or insurance. And he said that he would get a hold of Mr. Wilson [the president of H W, Inc.] and find out. And the next day . . . he came by my house and . . . told me that Mr. Wilson told him to tell me that I did not have any workmen's compensation or insurance."
This conversation took place on November 16, 1976, and is the basis for Ratledge's allegation of fraud.
Ratledge testified that he relied on Wilson's statement as reported by Wheeles and filed no workmen's compensation claim, but instead turned in his medical bills to his regular employer, Uniroyal. Over the course of his treatment, Ratledge had surgery on three discs in his neck and suffered a partial permanent disability.
Ratledge asserts that he first learned he had workmen's compensation coverage from H W, Inc., in February 1979. He testified that he was correcting his tax returns for 1976 and needed information concerning his employment at H W, Inc., during that year. While talking to a secretary there, he learned for the first time that there had been workmen's compensation coverage available to cover his time off from work after his accident as well as his disability.
On May 2, 1979, Ratledge filed suit for workmen's compensation benefits and for fraud based on the alleged misrepresentation that he was not covered by workmen's compensation insurance. These claims were severed and this appeal concerns only the fraud count. At the close of Ratledge's *Page 9 
evidence, the trial court granted H W's motion for directed verdict, stating:
 "By waiting from November of 1976 to February of 1979, some two years and three months, to inquire as to whether or not why [sic] he didn't have it, I'm saying that that is a little too long to wait. . . . I feel that he didn't exercise due diligence in determining whether or not that there had been a false representation made to him."
Ratledge argues that the question should have been submitted to the jury whether the running of the statute of limitations, Code 1975, § 6-2-39, was tolled by the provision of Code 1975, § 6-2-3, regarding discovery of fraud. He cites such cases asSims v. Lewis, 374 So.2d 298 (Ala. 1979); Papastefan v. B LConstr. Co., Inc. of Mobile, 356 So.2d 158 (Ala. 1978); andMitchell Homes, Inc., v. Tew, 294 Ala. 515, 319 So.2d 258
(1975), for the proposition that it is ordinarily a question for the jury whether a party discovered or should have discovered the fraud earlier than claimed.
H W, Inc., counters that the trial court did not err in directing a verdict in its favor. It points to Sexton v.Liberty National Insurance Company, 405 So.2d 18 (Ala. 1981);Papastefan v. B L Construction Co., Inc., 385 So.2d 966 (Ala. 1980); Harris v. Winter, 379 So.2d 588 (Ala. 1980); and Seyboldv. Magnolia Land Co., 376 So.2d 1083 (Ala. 1979), as instances where this Court has affirmed directed verdicts, summary judgments, and dismissals on rulings that the plaintiff knew or should have known of the facts allegedly constituting fraud more than one year prior to the institution of an action.
H W, Inc., argues that the statements to Ratledge that it would pay his medical bills were inconsistent with the later statement that he was not covered by workmen's compensation or insurance, and thus he had notice of facts sufficient to invoke the reasonable diligence which the trial court held he did not exercise. It points to Ratledge's testimony on cross-examination: "When [Mr. Wheeles] hired me, I asked him if we had any coverage. And he said that H W would take care of any injuries that you have."
This evidence does not suffice to prevent Ratledge from submitting his claim to a jury. It does not indicate that H W told Ratledge that he was covered by workmen's compensation, but only that Wheeles said H W would "take care of the bill." For all that Ratledge's testimony indicates, H W could have paid for his emergency room bill, which was not substantial, out of company funds or from proceeds of insurance other than workmen's compensation insurance. There was no evidence that Ratledge was told, either at the time he was hired or at the time of his accident, whether or not he was covered by workmen's compensation or other insurance. Moreover, even if he had some knowledge of coverage at the time of the accident, he might not have known that he could still file a claim some nine months afterwards when he found that his injuries were more serious than he had thought.
The trial court concluded that Ratledge did not exercise due diligence. This conclusion seems to require that he should have made further inquiries after Wheeles told him that he was not covered by workmen's compensation. The court's judgment also holds, in effect, that the two years before Ratledge discovered the alleged fraud was too long a period, as a matter of law, for the statute of limitations to be tolled. We hold that these conclusions are not supported by the record and thus the trial court erroneously directed a verdict for H W at the close of Ratledge's evidence.
Ratledge has presented at least a scintilla of evidence that he was informed by the president of H W, through Wheeles, that he was not covered under workmen's compensation at H W. Whether he was justified in relying on this statement is a question of fact to be determined by the jury. From the evidence presented it would be reasonable for Ratledge to treat Wilson's statement as authoritative and final. The inconsistency which H W alleges between Wilson's statement and the earlier statements that H W would pay his medical bills is not so pronounced, for the *Page 10 
reasons stated above, as to take the case from the jury.
In view of these facts, the trial court's holding, that Ratledge did not present a jury question whether he exercised due diligence to discover the fraud, cannot be upheld. There were no facts presented which would, as a matter of law, require Ratledge to make further inquiries which would have uncovered the fraud more than one year prior to the time he brought the action. The judgment of the court below is reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.