584 So.2d 458 (1991)
Betty E. HICKS
v.
GLOBE LIFE AND ACCIDENT INSURANCE COMPANY and J.C. Phillips.
1900291.
Supreme Court of Alabama.
May 31, 1991.
Rehearing Denied July 12, 1991.
*459 Jere L. Beasley and Kenneth J. Mendelsohn of Beasley, Wilson, Allen, Mendelsohn & Jemison, Montgomery, for appellant Betty E. Hicks.
Philip H. Butler of Robison & Belser, Montgomery, for appellee Globe Life and Acc. Ins. Co.
James W. Garrett, Jr. of Rushton, Stakely, Johnston & Garrett, Montgomery, for appellee J.C. Phillips.
PER CURIAM.
Betty E. Hicks sued Globe Life and Accident Insurance Company and its agent, J.C. Phillips, alleging intentional fraud arising out of the sale of a Globe hospitalization policy to Ms. Hicks. (We will sometimes refer to the defendants together as "Globe.") This is a fraud action involving a consumer transaction. The trial court entered a summary judgment for Globe and Phillips, holding, in pertinent part, as follows:
"In viewing the facts most favorably for [Ms.] Hicks, the Court holds that as a matter of law, under the facts of this case, [Ms.] Hicks's reliance on Phillips's misrepresentations was unreasonable, Syx v. Midfield Volkswagen, Inc., 518 So.2d 94 (Ala.1987); Southern Life & Health Insurance Co. v. Smith, 518 So.2d 77 (Ala.1987); and Torres v. State Farm Fire & Cas. Co., 438 So.2d 757 *460 (Ala.1983). The Court further finds that [Ms.] Hicks's claim is barred by the applicable statute of limitations because she had the policy in her possession and could have discovered the alleged fraud."
Ms. Hicks appeals.
This case was filed subsequent to June 11, 1987; therefore, the applicable standard of review is the "substantial evidence rule." "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989); Ala.Code 1975, § 12-21-12; Economy Fire & Casualty Co. v. Goar, 551 So.2d 957, 959 (Ala.1989). All reasonable doubts concerning the existence of a genuine issue of fact must be resolved in favor of the nonmoving party. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
As required under the applicable standard of review, we view the evidence in the light most favorable to Ms. Hicks. Viewed most favorably, that evidence is as follows:
Upon her retirement, Ms. Hicks had purchased a major medical health insurance policy with Blue Cross-Blue Shield ("Blue-Cross"). The Hicks family had no other health or medical insurance at the time. Ms. Hicks, whose husband had been disabled as the result of a stroke, often took her husband to the Luverne Nutritional Center ("the center") for lunch and for social activities. On March 13, 1985, Ms. Hicks had taken her husband to the center. On that same day, Phillips had made arrangements to come to the center to show a videotape that related to Medicare and Medicaid in order to make contacts to solicit sales of insurance. When Ms. Hicks returned to the center for her husband, even though Phillips had completed his presentation he introduced himself to Ms. Hicks; he questioned her concerning her insurance coverage and stated that he could save her money on a policy and provide her with a policy as good as, or better than, the one she already had. Phillips asked to come to her house to discuss the insurance in more detail, but Ms. Hicks told him that she was satisfied with her Blue Cross policy. Phillips persisted until Ms. Hicks agreed to allow him to come to her house to discuss the Globe policy. According to Ms. Hicks, Phillips arrived with a "big book which he used to go over certain items related to insurance" and told Ms. Hicks that if she was hospitalized due to an illness, the Globe policy would pay 80% of all hospital and doctor's bills with no deductible. Phillips also told Ms. Hicks that if she was not admitted to a hospital, the policy would not pay for any medical bills.
Initially, Ms. Hicks did not want to change policies, but based on Phillips's representations that the Globe policy would pay 80% of her hospital bills with no deductible, that the policy was comparable to her Blue Cross policy, and that the Globe policy would cost less than her Blue Cross policy,[1] Ms. Hicks decided to take the Globe policy. Thereafter, Phillips completed the application, and Ms. Hicks signed it. Three days later, Phillips delivered the policy to Ms. Hicks, who placed the policy in a desk drawer in her bedroom, without reading it. Subsequently, Ms. Hicks stopped paying premiums on the Blue Cross policy, causing that policy to lapse.
In April 1989, Ms. Hicks experienced shoulder pain and an irregular heartbeat. She was admitted to the hospital for a catherization. When her condition worsened, she was rushed to the CCU (critical care unit) for double bypass open heart surgery, for which she incurred medical expenses in excess of $40,000. Thereafter, Ms. Hicks submitted claims in the amount of $40,000 to Globe for her hospitalization.[2] *461 Globe refused to pay 80% of the submitted claim, because Ms. Hicks's policy was not a major medical policy. Globe paid only $8,925 of the $40,000, because the policy provided only limited benefits for hospital and surgical care. In June and August 1989, Ms. Hicks was readmitted to the hospital with other problems related to her circulatory system. Once again, Globe refused to pay 80% of the amount claimed by Ms. Hicks. Ms. Hicks sued Globe, alleging fraud.
Phillips said he did not specifically recall the meeting at Ms. Hicks's house or the discussion with Ms. Hicks, but that he was certain that he followed a standard procedurethat he went to her house with Globe brochures that outlined available coverage; reviewed these brochures with her; filled out the application in her presence, using the information she provided; obtained her signature on the application after she had had ample time to review the application; and received a $20 application fee and a deposit on the premium. Prior to his leaving, Phillips informed Ms. Hicks that the policy carried a 10-day "free look" provision that was clearly stated on the front of the policy, by which she could receive a refund if she returned the policy within that time period. He also left a receipt and a copy of the application with her. Subsequently, Globe mailed Ms. Hicks a copy of her application to review in order to ascertain if there were any errors on the application. Upon receipt of the approved application, Phillips then hand delivered the policy to Ms. Hicks and once again reviewed the policy with her, specifically addressing room and board amounts, accident coverage, surgical benefits, and intensive care. According to Phillips, at the time he met with Ms. Hicks, Globe did not sell a major medical policy. Furthermore, the application that Phillips filled out from information provided by Ms. Hicks clearly stated that the policy was not intended "to replace or change any existing accident and health insurance policy." According to Globe, Ms. Hicks testified that had she bothered to take the time to read either the application or the policy itself upon its delivery, she would have understood exactly what it stated and what coverage was provided. Ms. Hicks was not someone with a limited education who would have difficulty understanding the English language, insurance provisions, or medical termsMs. Hicks had graduated from college, had been certified as a registered nurse, and had taken post-graduate courses. Furthermore, according to Globe, when given an opportunity to review the policy during her deposition, Ms. Hicks stated that she found no provisions that she was unable to understand and that had she read the policy at the time she received it, she would have been able to understand it sufficiently to know of the alleged fraud.
The issues for our review are whether the trial court erroneously held that Ms. Hicks's reliance on Phillips's representations was unreasonable and whether the trial court erroneously held that Ms. Hicks's fraud claim was barred by the applicable statute of limitations.[3]

RELIANCEFRAUD CLAIM
Ms. Hicks contends that the trial court applied the wrong standard when it entered the summary judgment for Globe based on the "reasonable reliance" standard instead of the "justifiable reliance" standard. She also contends that she presented substantial evidence of justifiable reliance, so as to preclude the summary judgment.
As Ms. Hicks points out in her brief, in Harris v. M & S Toyota, Inc., 575 So.2d 74 (Ala.1991), this Court stated that it has abandoned the reasonable reliance standard:
"`In light of modern society's recognition of a standard of business ethics that demands that factual statements be made carefully and honestly,
"`"[r]eliance should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of *462 the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is `one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.'" Southern States Ford, Inc. v. Proctor, 541 So.2d 1081, 1091-92 (Ala.1989) (Hornsby, C.J., concurring specially).'

"Hickox v. Stover, 551 So.2d 259, 263 (Ala.1989). This Court has abandoned the requirement of `reasonable reliance,' whereby a party making a false statement prevailed whenever the person defrauded did not investigate the statement in order to discover fraud.

"The present standard of `justifiable reliance' requires the party making a representation to refrain from dishonest, untrue, or recklessly inaccurate or untrue statements. The party receiving the representation is required to be alert to statements that are patently false. Whereas the old standard of reasonable reliance placed a burden on the party to whom a representation was madethe burden of discerning the truthfulness of a statementthe new standard of justifiable reliance places a burden on the party making the statementthe burden of knowing the truthfulness of a statement."
575 So.2d at 77. (Emphasis added.)
In the case at bar, Globe's reliance argument hinges on the fact that Ms. Hicks had the policy in her possession but chose not to read it. Globe contends that, given Ms. Hicks's educational background and her ability to understand the nature of the transaction and its ramifications, as well as Phillips's testimony that he followed the standard procedure of explaining the policy's coverage in detail to Ms. Hicks, it is clear that Ms. Hicks closed her eyes to the truth and, therefore, cannot be said to have justifiably relied on the representations made by Phillips.
Globe mistakenly places the emphasis for its reliance argument on the circumstances surrounding Ms. Hicks's receipt of the policy and her failure to read it. The fact of the matter is that the fraud occurred, if it occurred at all, at the time Ms. Hicks paid the $20 application fee and gave Phillips the deposit on the premium for the policy, relying on his alleged statements as to the type of and amount of coverage provided by the Globe policy, not at the time she received the policy. See Liberty National Life Insurance Co. v. Sherrill, 551 So.2d 272 (Ala.1989); Southern Life & Health Ins. Co. v. Smith, 518 So.2d 77 (Ala.1987). Such statements by Phillips at the time of the application could have induced Ms. Hicks to actto cancel her then-existing major medical policy with Blue Cross and to replace it with what she believed to be a comparable, if not better, policy with Globe. The Globe application, which Phillips filled out from information provided by Ms. Hicks and which Ms. Hicks signed, does not clearly indicate the terms of the policy. Thus, the jury could have found that Ms. Hicks justifiably relied on Phillips's representations.
Accordingly, we hold that the trial court erred in holding that, as a matter of law, there had been no reliance that would support the fraud action.

STATUTE OF LIMITATIONS FRAUD CLAIM
Ms. Hicks contends that the trial court erroneously held that her fraud claim against Globe was barred by the applicable statute of limitations, because "she had the policy in her possession and could have discovered the alleged fraud." Although Ms. Hicks concedes that she filed her suit more than two years after she had purchased the Globe policy, she contends that because she filed it within eight months of Globe's refusal to pay the benefits she expected to receive based on the representations of Phillips, her suit was not barred by the statute of limitations.
The question of whether Ms. Hicks should have discovered the alleged fraud when she received the policy, so as to begin the running of the statutory limitations period is a question for the jury. It would be anomalous to hold on one hand that the plaintiff could justifiably rely on the alleged *463 fraudulent representations of Phillips, but to hold, on the other hand, that because of that reliance she cannot bring a fraud action. In Harris v. M & S Toyota, Inc., d/b/a Toyota City, supra, this Court enunciated its policy toward fraudulent business practices perpetrated on consumers:
"The present standard of `justifiable reliance' requires the party making a representation to refrain from dishonest, untrue, or recklessly inaccurate or untrue statements.... [T]he new standard of justifiable reliance places a burden on the party making the statementthe burden of knowing the truthfulness of a statement.
"This approach continues the move away from the doctrine of `caveat emptor' to the modern perspective that parties to transactions should be able to rely on representations that are not obviously false. Instead of `let the buyer beware,' the standard is becoming `let the liar beware.' See McDowell v. Key, 557 So.2d 1243 (Ala.1990), AT & T Information Systems, Inc. v. Cobb Pontiac-Cadillac, Inc., 553 So.2d 529 (Ala.1989), and Grimes v. Liberty National Life Ins. Co., 551 So.2d 329 (Ala.1989), as further examples of this Court's adoption and use of the standard of justifiable reliance in the context of claims alleging fraud."
575 So.2d at 77-78.
This Court's adoption of the subjective standard of justifiable reliance did not change the objective standard used to determine when a party should have discovered fraud for the purpose of the statute of limitations. However, the mere fact that the standard is an objective one does not foreclose a jury determination of the issue. The law in Alabama has long been that "[t]he question of when a party discovered or should have discovered fraud which would toll the statute of limitations is for the jury." Thompson v. National Health Ins. Co., 549 So.2d 12, 14 (Ala.1989) (quoting Vandegrift v. Lagrone, 477 So.2d 292, 295 (Ala.1985)); see, Hickox v. Stover, 551 So.2d 259 (Ala.1989); Deupree v. Butner, 522 So.2d 242 (Ala.1988); Davis v. Brown, 513 So.2d 1001 (Ala.1987); Myers v. Geneva Life Ins. Co., 495 So.2d 532 (Ala.1986); Elrod v. Ford, 489 So.2d 534 (Ala.1986); American Pioneer Life Ins. Co. v. Sandlin, 470 So.2d 657 (Ala.1985); Thomaston v. Thomaston, 468 So.2d 116 (Ala.1985); Osborn v. Johns, 468 So.2d 103 (Ala.1985); Ratledge v. H & W, Inc., 435 So.2d 7 (Ala. 1983); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala.1981); Sims v. Lewis, 374 So.2d 298 (Ala.1979); Cities Service Oil Co. v. Griffin, 357 So.2d 333 (Ala.1978); Mitchell Homes, Inc. v. Tew, 294 Ala. 515, 319 So.2d 258 (1975); Loch Ridge Construction Co. v. Barra, 291 Ala. 312, 280 So.2d 745 (1973); State Security Life Ins. Co. v. Henson, 288 Ala. 497, 262 So.2d 745 (1972); and Central of Georgia Ry. v. Ramsey, 275 Ala. 7, 151 So.2d 725 (1962). See, also, Independent Life & Acc. Ins. Co. v. Parker, 470 So.2d 1289 (Ala.Civ. App.1985); Wilson v. Draper, 406 So.2d 429 (Ala.Civ.App.1981); Jackson Co. v. Faulkner, 55 Ala.App. 354, 315 So.2d 591 (1975).
The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud. See, e.g., Sexton v. Liberty National Life Ins. Co., 405 So.2d 18 (Ala.1981); Seybold v. Magnolia Land Co., 376 So.2d 1083 (Ala. 1979). In Seybold, the Court stated that "[i]t is sufficient to begin the running of the statute of limitations that [the] claimant knew of facts which would put a reasonable mind on notice of the possible existence of fraud." 376 So.2d at 1087 (citing Jefferson County Truck Growers Ass'n v. Tanner, 341 So.2d 485, 488 (Ala.1977) (plaintiff had actual knowledge of facts sufficient to provoke inquiry by a reasonable person). (Emphasis added.)
To hold otherwise would be to nullify the saving provision of Ala.Code 1975, § 6-2-3, in cases where the alleged tort-feasor gives the consumer a written document. Such a holding is contrary to the purpose of the saving provision and the spirit of this Court's recent cases wherein the burden in consumer fraud cases has rightfully been *464 shifted to the one allegedly committing the fraud. See Hickox v. Stover, supra, and Harris v. M & S Toyota, supra.
We note Globe's reliance on Nichols v. North American Equitable Life Assur. Co., 502 So.2d 375 (Ala.1987), in support of its position that Ms. Hicks should have known of the alleged fraud because she had possession of the policy. However, a close reading of the Nichols case reveals that it does not support such a proposition. Rather, Nichols holds that, in order to commence the running of the limitations period, a plaintiff must have actual knowledge of facts that would lead a reasonable person to discover the alleged fraud. In fact, Nichols is a good example of how such knowledge is obtained and when it is proper to determine that, as a matter of law, the plaintiff should have discovered the alleged fraud.
In Nichols, the plaintiff, who had suffered from a chronic knee problem since 1977 or 1978, purchased a group medical insurance policy effective November 1, 1981. The plaintiff alleged that the insurer had represented to him that the policy would cover the pre-existing knee problem. In November 1982, the plaintiff had arthroscopic surgery on his knee; he subsequently filed a claim with the insurer for the surgery. However, the plaintiff refused to provide certain information that the insurer requested. On April 4, 1983, the insurer mailed the plaintiff a letter stating that it could not process the claim without further information and that the policy did not cover pre-existing conditions. The plaintiff admitted in deposition that when he received that letter, he knew that the policy would not cover the surgery on his knee. Although he admitted that on receipt of the April 4, 1983, letter he had knowledge of the alleged misrepresentation, he did not file his fraud action until May 1, 1984. The plaintiff conceded that he had received the April 4 letter at some point before May 1, 1984. Therefore, the trial court held that the plaintiff's fraud claim was barred by the applicable statute of limitations[4] and entered a summary judgment in favor of the insurer. This Court affirmed that judgment, because the plaintiff admitted that he knew of the misrepresentation when he read the letter that the insurer had mailed to him on April 4, 1983that is, the plaintiff actually knew before May 1, 1983, that the terms of the policy had been misrepresented to him. This Court, however, did not hold that the plaintiff should have known of the alleged misrepresentation in November 1981 when he received a copy of the insurance policy.
We have reviewed the record thoroughly and have found no evidence that Ms. Hicks had actual knowledge that the Globe policy was not a major medical policy as Phillips allegedly represented to her. To the contrary, all of the evidence before the trial court suggested that Ms. Hicks did not know until her bypass surgery that the Globe policy was not a major medical policy. Phillips admits that he went to the center and showed a videotape relating to Medicare and Medicaid, in order to obtain prospects to sell insurance. Ms. Hicks testified in her deposition that Phillips told her the Globe policy would provide her with a policy as good as, or better than, the one she already had with Blue Cross. She also testified that she purchased the Globe policy based on Phillips's representations that the Globe policy was a major medical policy and, therefore, that she allowed her Blue Cross policy to lapse. In fact, what Ms. Hicks purchased was not a major medical policy, but a limited benefits policy; by the change in policies she received a savings of only $9.14 per month. Thus, the jury could have concluded that Ms. Hicks acted reasonably with regard to her discovery of the alleged fraudthat Ms. Hicks acted reasonably in not discovering the alleged fraud until Globe refused to pay 80% of the cost of her bypass surgery. Therefore, the question of when Ms. Hicks should have discovered the fraud so as to begin the *465 running of the statutory period of limitations should be decided by a jury. Accordingly, we reverse the summary judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, KENNEDY and INGRAM, JJ., concur.
SHORES, J., concurs in the result.
MADDOX, HOUSTON and STEAGALL, JJ., concur in part and dissent in part.
ALMON, J., dissents.
SHORES, Justice (concurring in the result).
I agree that the judgment is due to be reversed and the cause remanded for a trial. I do not agree with the conclusion of the majority that Mrs. Hicks stated that she would have been able to understand the policy had she read it. What she said was:
"A. Well, I guess if I would have read it, I could have made sense out of some of it anyway.
"....
"A. I imagine I could have [understood the policy]."
First, I do not believe this can reasonably be construed to be an unequivocal statement by Mrs. Hicks that she could have understood the policy had she read it. Second, I would not "hold her" to that statement even had she made it. It is unrealistic to conclude that a layman, even one with a college education, such as Mrs. Hicks, could understand an insurance policy if she read it. History teaches, and the reported cases from this Court, and all others, evidence that all too often judges and lawyers disagree on the meaning of insurance policies.
I believe a jury should decide whether Mrs. Hicks was justified in relying on the statements made to her about the scope of the coverage she was being offered by Globe's agent. Common sense teaches that one would not cancel major medical coverage for less coverage unless there was a greater saving in premium than that involved here or the scope of the coverage being offered was misrepresented.
I also believe a fact issue exists as to when Mrs. Hicks discovered, or should have discovered, that she had been a victim of fraud. For these reasons, I concur in the result of the per curiam opinion.
HOUSTON, Justice (concurring in part and dissenting in part).
Because of this Court's recent adoption of the new subjective "justifiable reliance" standard of review in fraud cases, I must concur with that portion of the per curiam opinion holding that the trial court erred in basing its summary judgment on a lack of reliance; I agree that the issue of reliance would have been a jury question, had the summary judgment not otherwise been proper. However, I disagree with the per curiam opinion in its disposition of the statute of limitations issue. Therefore, I respectfully dissent from the per curiam opinion as to that issue.
Based on the holding in this case, it would appear that the Court has established, without articulating it as such, that the affirmative defense of the statute of limitations is contingent upon the issue of justifiable reliancein other words, that if a plaintiff receives a policy, whether or not he reads the policy and whether or not he could have understood its provisions, the question of when that plaintiff discovered the fraud for purposes of the statute of limitations is a question for the jury, if that plaintiff's reliance on the alleged representations was not unjustifiable as a matter of law or if the question of whether the plaintiff's reliance was justifiable was a jury question. See, Hickox v. Stover, 551 So.2d 259 (Ala.1989); see, also, Thompson v. National Health Ins. Co., 549 So.2d 12 (Ala. 1989), and Vandegrift v. Lagrone, 477 So.2d 292 (Ala.1985).
The aims and purposes of a statute of limitations are adequately set forth in 51 Am.Jur.2d Limitations of Actions § 17 (1970) as follows:
"The primary purpose of a statute of limitations is to compel the exercise of a *466 right of action within a reasonable time so that the opposing party has a fair opportunity to defend. Statutes of limitation[s] are founded upon the general experience of mankind that claims which are valid are not usually allowed to remain neglected if the right to sue thereon exists. Statutes of limitation[s] are designed to prevent undue delay in bringing suit on claims and to suppress fraudulent and stale claims from being asserted, to the surprise of the parties or their representatives, when all the proper vouchers and evidence are lost, or the facts have become obscure from the lapse of time or the defective memory or death or removal of witnesses. As stated by the Supreme Court of the United States, the purpose of a limitation upon the time within which an action may be commenced is to insure repose and to require that claims be advanced while the evidence to rebut them is still fresh.
"The mischief which statutes of limitation[s] are intended to remedy is the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert. Thus, while one of the purposes of the statutes of limitation[s] is to relieve a court system from dealing with `stale' claims, where the facts in dispute occurred so long ago that evidence was either forgotten or manufactured, there is another element of a more substantive character in the protection of the potential defendants from protracted fear of litigation.
"In order to encourage promptness in the bringing of actions, such statutes restrict to fixed, arbitrary periods the time within which rights, otherwise unlimited, may be asserted."
Whereas the general statute of limitations for a fraud action, Ala.Code 1975, § 6-2-38, provides that any such action must be commenced within two years from the date of the fraud, the "saving provision" (Ala.Code 1975, § 6-2-3, "Accrual of claimFraud"), since its inception, has extended the time period for a right of action until the party either discovered or should have discovered the fraud:
"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."
If it appears that the statutory period has expired, then the burden is on the party bringing the fraud action to show that he comes within the purview of this saving provision. See, Lowe v. East End Memorial Hospital, 477 So.2d 339 (Ala. 1985); Russell v. Maxwell, 387 So.2d 156 (Ala.1980); and Amason v. First State Bank of Lineville, 369 So.2d 547 (Ala. 1979).
"`Under [§ 6-2-3], the claim for fraud is considered as having accrued at the time of "the discovery by the aggrieved party of the fact constituting the fraud." Following that discovery, that party has [two years] within which to file his action. This Court has held that fraud is "discovered" when it ought to or should have been discovered. Moulder v. Chambers, 390 So.2d 1044 (Ala.1980); Jefferson Co. Truck Growers Ass'n v. Tanner, 341 So.2d 485 (Ala.1977). Thus, the time of "discovery" is the time at which the party actually discovered the fraud, or had facts which, upon closer examination, would have led to the discovery of the fraud. Papastefan v. B & L Construction Co., Inc. of Mobile, 385 So.2d 966 (Ala.1980).'"
Parsons Steel, Inc. v. Beasley, 522 So.2d 253, 256 (Ala.1988).
Although I recognize, all too well, that this Court in Hickox v. Stover, supra, by adopting the rationale of Chief Justice Hornsby's special concurrence in Southern States Ford, Inc. v. Proctor, 541 So.2d 1081, 1087-92 (Ala.1989),[5] as it related to *467 the issue of reliance in fraud cases, established the new subjective standard of "justifiable reliance," I am convinced that that decision in no way altered the objective standard by which to determine the statute of limitations issue in fraud cases. Clearly, the objective standard that the courts use in order to determine when one "discovered" the alleged fraud for purposes of the statute of limitations issue is not, and should not be misconstrued as being, in any way analogous to the subjective standard by which the courts determine whether one justifiably relied on the representations of another. Chief Justice Hornsby, in his special concurrence in Southern States Ford, Inc. v. Proctor, supra, at 1090-91, specifically emphasized this distinction and specifically addressed the correct standard to apply for purposes of the statute of limitations issue in fraud cases:

"Gonzales v. U-J Chevrolet Co. [451 So.2d 244 (Ala.1984)], Papastefan v. B & L Construction Co., and Johnson v. Shenandoah Life Ins. Co. [291 Ala. 389, 281 So.2d 636 (1973)] [cited in Traylor] involve statute of limitations issues. The focus in those cases was on the plaintiff's prudence in discovering his damage, not on whether his reliance on any representations was warranted.
"The cases cited in Traylor correctly reflect that statutes of limitations, even when based on the `discovery rule' in the fraud context, should be measured by objective standards. Traylor itself, however, is an intentional fraud case involving a consumer transaction and no statute of limitations issue; the focus there was on the plaintiff's reliance, and thus on a question wholly different from when the plaintiff should have discovered the fraud. Obviously, the plaintiff in Traylor discovered that he had been damaged as the result of the defendant's representation, i.e., the plaintiff discovered the fraud; the sole question left undetermined was whether his reliance was warranted. That determination, as we recognize today, should have been made according to subjective standards by asking whether the reliance was justifiable, not according to objective standards measuring the reasonableness of the plaintiff's reliance, and certainly not by resort to an inappropriate analogy to a statute of limitations concern.

"Munroe v. Pritchett, 16 Ala. 785 (1849), is vital and is consistent with [this] analysis. In that case, the Court wrote:
"`If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, "volunti non fit injuria."'

"Id. at 789. That Court also recognized [a] strong public policy that dictates punishing those who profit by their resort to trickery and deceit:

"`"He who affirms either what he does not know to be true, or knows to be false, to another's prejudice and his own gain, is, both in morality and law, guilty of falsehood, and must answer in damages." The concluding remark in the foregoing extract... we think is a very just and correct exposition of the rule of law.'
"Id. (quoting Adamson v. Jarvis, 4 Bing. 66, 73, 130 Eng.Rep. 693, 696 (C.P.1827)) (emphasis in Munroe).

"In an intentional fraud case involving a consumer transaction there are two competing concerns: ensuring that the consumer take some measure of self-protection, and dissuading sellers from engaging in deceitful conduct and punishing them if they do. Taken literally, the emphasized quotation above from Munroe v. Pritchett, supra, could be interpreted to impose strict liability for intentional fraud. This result ignores the first concern: requiring the consumer to protect his own interests, at least minimally. ..."
541 So.2d at 1091. (Some emphasis original; other emphasis added.)
*468 As Chief Justice Hornsby so aptly stated in his special concurrence in Southern States Ford v. Proctor, quoted above, whereas the issue of reliance should be decided according to a subjective standard (measuring whether Ms. Hicks's reliance was justifiable), not according to an objective standard (measuring the reasonableness of her reliance), the issue of reliance should "certainly not [be decided] by resort to an inappropriate analogy to a statute of limitations concern." 541 So.2d at 1091.
Furthermore, as stated in Vance v. Huff, 568 So.2d 745, 751 (Ala.1990):
"This Court has repeatedly held that the right to rely on the representations of others comes with a concomitant duty on the part of plaintiffs to exercise some measure of precaution to safeguard their interests. See Torres v. State Farm Fire & Casualty Co., 438 So.2d 757, 758-59 (Ala.1983), and cases cited therein. If the circumstances surrounding the alleged misrepresentations are such that a reasonably prudent person exercising ordinary care would have discovered the facts, the plaintiff is not entitled to recover. Bedwell Lumber Co. v. T & T Corp., 386 So.2d 413, 415 (Ala.1980)."
Some of the cases dealing with statute of limitations issues may be distinguishable in regard to the question of when the plaintiff discovered the alleged fraud, because of the technicality of the terms in the documents or because of the educational background of the parties; and the mere fact that one has the ability to read and/or possesses a certain educational background does not alone create an inference that the party could or could not have understood the policy had that party read it. See, Liberty National Life Insurance Co. v. Sherrill, 551 So.2d 272 (Ala.1989); Traylor v. Bell, 518 So.2d 719 (Ala.1987). However, such is not the case here. Rather, it is undisputed that when Phillips hand delivered the policy to Ms. Hicks (who had a college degree, was a trained registered nurse, and had taken post-graduate courses), she put the policy in a drawer without reading it. There are no allegations that Phillips tried to prevent Ms. Hicks from reading the policy or that she did not have sufficient time to read the policy.
Globe contends that the trial court was justified in holding that Ms. Hicks's fraud claim was barred by the statute of limitations for the following reasons: Ms. Hicks read the application prior to paying the deposit on the premium and before paying the application fee; she had a further opportunity to review the application for any inconsistencies prior to receiving the policy; she had the opportunity to read the policy that Phillips delivered, which he thoroughly explained to her upon its delivery. Globe also contends that given the clear language of the policy and given Ms. Hicks's educational background, had she read the policy upon its receipt, she would have discovered that the policy provided only limited benefits coverage.
Ms. Hicks merely contended that because she relied on Phillips's representation that the Globe policy provided major medical coverage, she did not need to read the policy. She also contended that one would have to read several pages into the policy before learning that the Globe policy provided benefits different from those represented by Phillips, and that neither the application nor the policy clearly contradicted Phillips's representation.
Applying the objective standard in assessing the statute of limitations issue in this case, in which, I believe, is incorporated the duty to read a document upon its receipt, it was incumbent upon Ms. Hicks to exercise some measure of self-protection in order to ensure that the Globe policy she purchased provided the type of coverage that Phillips allegedly representedthat is, she had the duty to review the Globe policy upon its receipt in order to ascertain if that policy did in fact provide major medical coverage, as Phillips had allegedly represented. Under this objective standard, the question would then become whether Ms. Hicks would have, or should have, discovered the fraud if she had exercised even minimal precaution by reading the policy before she placed it in the drawer.
*469 I think that the following pertinent portion of Ms. Hicks's deposition testimony clearly establishes, as Globe contended, that had Ms. Hicks read the Globe policy upon its receipt, had she exercised some precaution, even minimally, to safeguard her interests, she would have understood the provisions of the policy and could have "discovered" the alleged fraud for purposes of the statute of limitations issue:
"Q. Have you tried to read your policy, your Globe policy?
"A. Not really.
"Q. Okay. So can you tell the Court... that you wouldn't understand it if you [had] tried to read it?
"A. Well, I've seen it. I've looked at it. But I don't really understand what it covers and what it doesn't from looking at it, other thanbecause it's conflicting to what Mr. Phillips told me.

"Q. Well, I don't know ... what you mean by the difference of looking at it versus reading it. This policy is in printed form.
"A. Well, I haven't read the policy. Okay?
"Q. Can you point out anything in the policy that you don't understand....?
"....
"Q. I want you to tell me with that policy that you've had from three or four days after you took out the application in March of '85 up to the present date, tell me, please, ma'am, ... what in that policy you do not understand.
"A. I don't understand how [Phillips] could have sold me a policy like this.
"Q. That's not my question.
"A. ....
"Q. I want you to point out in the policy... in the Globe policy what you do not understand.
"....
"A. Well, I guess if I would have read it, I could have made sense out of some of it anyway.
"Q. Well, I want to know what part of it you could not have made sense out of.
"A. Well, I don't know. I just didn't read the policy.
"Q. Right. But had youWould you agree with me now that you have read the policy during your deposition that you could have understood it had you read it?

"A. Yes, I imagine I could have."

(Emphasis added.)
Based on Ms. Hicks's own admission, had she read the Globe policy upon receiving it, i.e., had she exercised some precaution to safeguard her interests, she could have understood the provisions of the policy and, therefore, would have "discovered" that the policy did not provide major medical coverage as allegedly represented by Phillips. Therefore, because Ms. Hicks failed to meet her burden of presenting evidence to establish that she came within the purview of § 6-2-3, I would affirm the trial court's holding that Ms. Hicks's fraud claim was barred by the statute of limitations, and I would affirm the summary judgment.
MADDOX and STEAGALL, JJ., concur.
ALMON, Justice (dissenting).
In light of subsequent developments, I realize that I should have concurred specially in Hickox v. Stover, 551 So.2d 259 (Ala.1989). The adoption in part B of that opinion of the "justifiable reliance" standard in fraud cases caused a change in the law of fraud. I believe that the evidence in Hickox presented a jury question on the issue of reliance under the "reasonable reliance" standard because of the complexity of the insurance provisions at issue and because the communications from the insurance agent did not put the insured on notice as a matter of law of the alleged misrepresentation that the new policy was as good as the old.
The traditional standard of "reasonable reliance" provided a flexible concept adaptable to the circumstances of each case, including the relative sophistication and bargaining powers of the parties. The new standard of "justifiable reliance" gives to parties claiming fraud undue leeway to ignore written contract terms and allows in *470 some cases the automatic creation of a jury issue by a plaintiff's statement in contradiction of such written terms.
This case presents an example of the perils of the "justifiable reliance" standard: the new policy was clearly not a major medical policy, and the plaintiff was a former nurse who admittedly could have understood the difference between this hospitalization and surgery policy and a major medical policy if she had simply glanced at it. I do not think it is reasonable for a college-educated person to simply drop an insurance policy into a drawer without even a cursory look at it and later to claim that she has been defrauded.[6] I would affirm the summary judgment for the defendants.
NOTES
[1] The monthly cost of the Globe policy was $84 ($252 every three months). The monthly cost of the Blue Cross policy was $93.14 ($186.28 every two months).
[2] We note, from a thorough review of the record, that at some time prior to Ms. Hicks's submission of this claim, she had submitted other claims to Globe for which she was paid, apparently under the terms of the policy and in an amount that she deemed adequate. See Record pp. 413-15.
[3] The applicable statute of limitations was two years. Ala.Code 1975, § 6-2-38(l).
[4] In Nichols, the applicable statutory period of limitations for fraud actions was one year. The one-year statute, Ala.Code 1975, § 6-2-39, was repealed effective January 9, 1985, and fraud actions were on that date transferred to the two-year statute. Ala.Code 1975, § 6-2-38. Therefore, for purposes of the present appeal, the applicable period of limitations is two years.
[5] In his special concurrence, Chief Justice Hornsby specifically distinguished those cases involving consumer transactions, such as the instant case, from those cases involving commercial transactions as they related to the issue of reliance, maintaining that "the objective standard of `reasonable reliance'" correctly employed in commercial transactions "should not have subsequently trod into the arena of consumer transactions" in which the subjective standard of "justifiable reliance" should be employed. See Vance v. Huff, 568 So.2d 745 (Ala. 1990) (a case involving a commercial transaction).
[6] Alabama Code 1975, § 27-12-6, prohibits insurance agents from "misrepresenting or making misleading incomplete comparisons as to the terms, conditions, or benefits" of an offered policy for the purpose of inducing its substitution for an existing policy. This Court has held that allegations of violations of this statute can support a claim of fraud. See Guinn v. American Integrity Ins. Co., 568 So.2d 760 (Ala.1990); HealthAmerica v. Menton, 551 So.2d 235 (Ala. 1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990); Tribble v. Provident Life & Acc. Ins. Co., 534 So.2d 1096 (Ala. 1988); and Jarrard v. Nationwide Mutual Ins. Co., 495 So.2d 584 (Ala.1986). Even with a legislatively declared policy against such statements, an applicant must have some duty to look out for his or her own interest.