This fraud case arises out of Louise Parker's purchase of a life insurance policy from Liberty National Life Insurance Company ("Liberty National"). Parker sued Liberty National, seeking damages for fraudulent misrepresentation and suppression, alleging that agent Mike Horn, and other representatives of Liberty National, represented to her that she was the owner of the policy, when, in fact, her husband was the owner. The trial court denied Liberty National's motion for a directed verdict and submitted Parker's claims to a jury. The jury returned a verdict of $20,000 compensatory damages and $100,000 punitive damages in favor of Parker. The trial court denied Liberty National's motion for a judgment notwithstanding the verdict. Because we conclude that Parker's claims were barred by the applicable statute of limitations, we reverse and enter a judgment for Liberty National. Viewed in the light most favorable to Parker, the evidence suggests that between May 1989 and June 1990, Parker purchased four life insurance policies from Liberty National. Her now ex-husband, Earl Parker, from whom she was separated during the period of these purchases, was the insured. Parker purchased two whole life insurance policies (an "ALW" policy and a "unique life" policy) and two term life insurance policies. All of Parker's claims arise from the ALW policy.
The ALW policy and the unique life policy listed Earl as the owner. The two term policies listed incorrect information regarding Earl's age, height, or weight. Parker contacted Mike Horn about correcting the ownership listings and these other problems. Horn and another Liberty National representative met with Parker in June 1990 to discuss the corrections; they indicated that all the changes she requested would be made. Although the other changes were made, the ownership change in the ALW policy was never made. *Page 308 
In September 1990, Liberty National mailed a copy of the ALW policy and the unique life policy to Parker. The cover letters for both policies listed Earl as the insured. The cover letter for the unique life policy was addressed to Parker, and stated that the policy was "your policy." The cover letter for the ALW policy, however, was addressed to Earl and stated that it was "your policy." Parker testified that she received the policies and the letters. Parker did not at that time file a fraud action.
Parker testified that in 1992 she asked Horn if she could take out a loan on the ALW policy and that Horn said that after less than three years of premium payments there was not enough accumulated loan value in the ALW policy. There was, however, a loan value in the unique life policy, and Parker eventually obtained a loan from it.
Parker testified that later in 1992, or in early 1993, she wanted to drop one of the four policies and that Horn suggested she drop the ALW policy. In May 1993 she filled out a loan application for the ALW policy. In June 1993, she received a letter denying her loan application because she was not the owner of the ALW policy.
Parker testified that she voiced her concerns to Liberty National's Birmingham office. Parker decided to cancel the policy, and Liberty National sent a check in the amount of $4,160.60, representing the full amount of the premiums Parker had paid for the ALW policy. Parker filed this action in December 1993.
Liberty National moved for a directed verdict based on its argument that the statute of limitations barred Parker's claims. The trial court denied that motion. We review the trial court's denial of the motion for directed verdict to determine whether Parker presented substantial evidence to support each element of her claim. Malcolm v. King, 686 So.2d 231, 236
(Ala. 1996).
The statute of limitations for fraud actions generally allows two years for filing a claim. Ala. Code 1975, § 6-2-38(l).[1] The two-year period does not start to run until the plaintiff has actual knowledge of facts that would have put a reasonable person on notice of the fraud. Ala. Code 1975, § 6-2-3; Hicks v.Globe Life Acc. Ins. Co., 584 So.2d 458, 463 (Ala. 1991).[2] The question of when the party discovered or should have discovered the fraud is generally one for the jury. Kelly v. ConnecticutMutual Life Ins. Co., 628 So.2d 454, 458 (Ala. 1993) (citingVandegrift v. Lagrone, 477 So.2d 292, 295 (Ala. 1985)). InKelly, we stated (applying the rule under Hicks):
 " '[F]raud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered.' . . . However, . . . documents that are vague or that do not reasonably indicate that a fraud has occurred, based on the circumstances of each case, will not 'warrant a finding that the fraud claim is barred as a matter of law.' "
628 So.2d at 458 (emphasis added; other emphasis omitted) (quoting Hickox v. Stover, 551 So.2d 259, 262 (Ala. 1989)).[3]
Liberty National presented undisputed evidence that in September 1990 Parker actually received the cover letter regarding the changes she had requested on the ALW policy. The letter was not vague. It was *Page 309 
addressed to Earl, not to Parker, and it stated that the ALW policy was "your policy." Parker, a college-educated former teacher in her mid-50s when she received the letter, testified that she did not understand the phrase "your policy" in the letter addressed to Earl to mean that it was Earl's policy. This evidence is insufficient to rebut the inference that a reasonable person would have understood the letter to refer to Earl as the owner of the ALW policy.[4] We conclude that, as a matter of law, the September 1990 letter provided sufficient notice to start the running of the two-year limitations period.Kelly, 628 So.2d at 458.
We also noted in Kelly:
 "[O]nce a plaintiff has learned of facts that would put a reasonable person on notice of fraud, if that plaintiff then makes an inquiry concerning the purported fraud and is misinformed or falsely informed by the defendant, so that the plaintiff justifiably relies on the defendant's misrepresentation and his fears of fraud are thereby allayed, then the running of the limitations period is still tolled as to the fraud claim."
628 So.2d at 459 (emphasis added) (citations omitted). Parker offered no evidence that during the two years after she received the September 1990 letter she inquired about the ownership of the policy. Parker testified only that sometime in 1992 she attempted to, but was told that she could not, obtain a loan on the ALW policy, and that in late 1992, or early 1993, after the two-year limitations period had expired in September 1992, Horn suggested that she cancel the ALW policy in order to reduce her total premium payments on all the policies. Neither of these events was an "inquiry concerning the purported fraud" that would have tolled the running of the limitations period.[5] Parker's claims are therefore time-barred.
REVERSED AND JUDGMENT RENDERED.
HOOPER, C.J., and MADDOX, ALMON, and HOUSTON, JJ., concur.
SHORES, J., recuses.
[1] Ala. Code 1975, § 6-2-38, provides:
 "(l) All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."
(Emphasis added.)
[2]Ala. Code 1975, § 6-2-3, provides:
 "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."
(Emphasis added.)
[3] We note that for actions filed after March 14, 1997, ForemostIns. Co. v. Parham, 693 So.2d 409 (Ala. 1997), overruled the justifiable reliance standard enunciated in Hickox v. Stover,551 So.2d 259 (Ala. 1989), for fraud actions, and the discovery standard enunciated in Hicks v. Globe Life Acc. Ins. Co.,584 So.2d 458 (Ala. 1991), for determining when the statutory limitations period began to run in a fraud action.
[4] In addition, the cover letter on the unique life policy that Parker received on the same day was addressed to her, and it stated that she owned that policy.
[5] Because we hold that Parker's claims, all of which directly arose from her claimed ownership of the ALW policy, are time-barred, we do not address Liberty National's claims: (1) that Parker failed to present substantial evidence of intentional or willful fraud; (2) that the misrepresentation, if any, was due to the innocent use of the wrong change form; (3) that the trial court erred in not charging the jury on promissory fraud; (4) that the trial court erroneously charged the jury regarding damages for mental anguish; and (5) that the trial court erroneously charged the jury regarding fraudulent concealment.