SEE, Justice.
The trial court entered a partial summary judgment in favor of the defendants American General Finance, Inc., Robert D. Faulkner, and James Sloop (collectively “American General”), in a fraud action by Mary L. Reynolds. The Court of Civil Appeals reversed that judgment. See Reynolds v. American Gen. Fin., Inc., 795 So.2d 681 (AIa.Civ.App.1999). We granted certiorari review to address the question whether, as a matter of law, the plaintiff Reynolds must be held to have discovered the alleged fraud more than two years *687 before she filed her action; if so, then it is barred by the statute of limitations. See Ala.Code 1975, § 6-2-38 ffi and § 6-2-3. Because we hold that Reynolds’s fraud action is barred by the statute of limitations, we reverse the judgment of the Court of Civil Appeals.
In 1985, Mary L. Reynolds bought a house. Six months later, she sold it to Raymond L. Sherrin and Lezlie Taylor Sherrin for $45,000.[1] Reynolds financed the purchase for the Sherrins. They gave her a promissory note for $41,000 and executed to her a mortgage covering the real estate on which the house was located. The note provided for an annual interest rate of 10% and for monthly payments of $359.80. In April 1988, Reynolds contacted Robert Faulkner, an employee of American General, to inquire about borrowing $5,000 from American General. Reynolds testified that Faulkner said American General would charge “20% interest,” and that Reynolds could make “a partial payment assignment of [the] payments” she was receiving from the Sher-rins under the promissory note and mortgage.
Reynolds met with Faulkner at American General’s office and signed two separate, standardized documents. One was entitled, “A Partial Assignment of Promissory Note and Mortgage” and the other was entitled “Settlement Statement.” Reynolds admitted that she had the opportunity to read the documents before she signed them, but she stated that she did not do so. She testified, however, that she did ask Faulkner “what it all involved,” and that Faulkner responded by saying that “it just had the amount of monthly notes on it, you know, how many notes that it would take to pay that back.” The Partial Assignment of Promissory Note and Mortgage states that Reynolds assigns “for a period of 17 months” all her rights, title, and interest in the promissory note and the mortgage the Sherrins had given her. The Settlement Statement lists the “Sale Price” as $5,214.57, and expenses in the amount of $75 for an appraisal fee, $107.50 as a title-policy fee, and $8.50 as a recording fee, and the Settlement Statement is silent as to the interest rate. Reynolds left American General’s office with a check for $5,023.57 and copies of the Partial Assignment and the Settlement Agreement.
In May 1988, Reynolds again telephoned Faulkner and requested an additional $5,000. Reynolds testified that Faulkner told her over the telephone that “the same terms” (including the 20% interest rate) would apply. Reynolds went to American General’s office on May 20, 1988, and signed another Partial Assignment and another Settlement Statement, those documents containing in substance the same language as that contained in the earlier documents. As a result of this second transaction, the first loan was “paid off,” Reynolds received an additional $5,000, and she assigned her rights, title, and interest in the Sherrins’ promissory note and mortgage “for a period of 38 months.”
In July 1988, Reynolds and American General entered into a third similar loan transaction. Reynolds received an additional $5,000, the second loan was paid off, and she assigned the Sherrins’ payments to American General “for a period of 76 months.” In December 1988, Reynolds and American General entered into a fourth similar loan transaction, in which Reynolds received an additional $1,000, the third loan was paid off, and Reynolds assigned the Sherrins’ payments to American General “for a period of 87 months.” *688 All four of these loan transactions were handled by Faulkner. After each transaction, Reynolds received a copy of the Partial Assignment and a copy of the Settlement Statement for that transaction.
In May. 1991, Reynolds telephoned American General and spoke with James Sloop, another employee of American General. Reynolds told Sloop about the previous agreements and told him she needed $500. Reynolds and American General entered into a fifth similar loan transaction. Reynolds received a copy of thé Partial Assignment and the Settlement Statement from the fifth and final loan transaction.
In 1995, the Sherrins decided to sell the house. Reynolds received a telephone call from a title company asking her for the “payoff,” or balance owed, on the mortgage.[2] Reynolds told the title company that she did not know the payoff amount and would have to telephone American General for that information. Reynolds telephoned American General for the payoff amount, and she spoke with employee Tracy Skipper. Ms. Skipper told Reynolds that the Sherrins owed approximately $27,000 to her and an additional $10,000 to American General. Reynolds did not agree with the payoff amount Skipper gave her, so she tried to calculate it herself, and concluded “something was wrong.” Reynolds later contacted American General and told Skipper that she “didn’t agree with the payoff’ figure.
Reynolds also contacted an attorney and an accountant. Reynolds gave the accountant all the loan documents she had received from American General. The accountant reviewed the documents and told Reynolds that the interest rate on the loans “was more than 20%.”
On August 7, 1996, more than eight years after the first transaction had closed, and more than five years after the final transaction had closed, Reynolds sued American General, Faulkner, and Sloop, alleging several species of fraud.[3] The trial court entered a summary judgment in favor of American General, Faulkner, and Sloop on all of Reynolds’s claims related to the first four loan transactions, “based upon the statute of limitations!,] given [Reynolds’s] own admission that she had the same documentation and information in 1988 and 1991 that she states put her on notice of the alleged fraud in 1996 leading to filing of this action.” The trial court denied the defendants’ motion for summary judgment as it related to Reynolds’s fraud claims based on the fifth and final loan transaction, which had occurred in May 1991. The trial court entered a final judgment, pursuant to Rule 54(b), Ala. R.Civ.P., as to all of Reynolds’s claims based on the first four loan transactions. Reynolds’s claims with respect to the fifth and final loan transaction are still pending before the trial court.
The Court of Civil Appeals reversed the summary judgment, holding that “the question whether Reynolds justifiably[4] relied upon Faulkner’s alleged representations, so that the running of the limitations period was tolled, is to be determined by a jury.” Reynolds v. American Gen. Fin., Inc., 795 So.2d at 685.
American General argues that the Court of Civil Appeals erred in reversing the partial summary judgment. It argues that *689 Reynolds’s fraud claims are barred, as a matter of law, by the statute of limitations, because, it contends, the loan documents Reynolds received were sufficient to put a reasonable person on notice of the alleged fraud, specifically, that the documents provided notice that the interest rate charged on the loans exceeded the amount represented. We agree.
This Court reviews a summary judgment de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). When a defendant bases its motion for a summary judgment on an affirmative defense, such as the statute of limitations, as American General has done in this case, this Court applies the following standard of review:
“ ‘When there is no genuine issue of material fact as to any element of an affirmative defense, ... and it is shown that the defendant is entitled to a judgment as a matter of law, summary judgment is proper. If there is a genuine issue of material fact as to any element of the affirmative defense, summary judgment is inappropriate. Rule 56(c), Ala.R.Civ.P. In determining whether there is a genuine issue of material fact as to each element of an affirmative defense, this Court must review the record in a light most favorable to the plaintiff (the nonmoving party) and must resolve all reasonable doubts against the defendant (the movant).’ ”
Bechtel v. Crown Cent. Petroleum Corp., 495 So.2d 1052, 1053 (Ala.1986).
An action alleging fraud is subject to a two-year statute of limitations. Ala. Code 1975, § 6-2-38 (i). “The two-year period does not start to run until the plaintiff has actual knowledge of facts that would ... put a reasonable person on notice of the fraud.” Liberty Nat’l Life Ins. Co. v. Parker, 703 So.2d 307, 308 (Ala.1997) (citing Ala.Code 1975, § 6-2-3[5]; Hicks v. Globe Life & Acc. Ins. Co., 584 So.2d 458, 463 (Ala.1991)[6]).
The question when the plaintiff discovered or should have discovered the fraud for statute-of-limitations purposes is generally one for the jury. Parker, 703 So.2d at 308. However, this Court has recognized that “there are times when this question is removed from the purview of the jury” and can be decided as a matter of law. Kelly v. Connecticut Mut. Life Ins. Co., 628 So.2d 454, 458 (Ala.1993). “The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud.” Hicks, 584 So.2d at 463. This Court has explained that “it is the knowledge of such facts that would have alerted a reasonable person to .the existence -of a potential fraud, and not actual knowledge of the fraud itself, that determines whether the question of the tolling of the limitations period in a fraud case [under § 6-2-3] can be decided as a matter of law.” McGowan v. Chrysler Corp., 631 So.2d 842, 845 (Ala.1993). “As a corollary to this rule, ‘[w]e have held that fraud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the *690 fraud reasonably should be discovered.’ ” Kelly, 628 So.2d at 458 (quoting Hickox v. Stover, 551 So.2d 259, 262 (Ala.1989), overruled by Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997)). This corresponding rule does not apply where the documents “are vague or ... do not reasonably indicate that a fraud has occurred, based on the circumstances of [the] case.” Id.
American General argues that the loan documents Reynolds received from American General in 1988 and 1991 were sufficient to lead her to discover the alleged fraud because these very same documents, by Reynolds’s own admission, led her to the actual discovery of the alleged fraud in December 1995, when she says she read the documents for the first time. Therefore, American General argues, her claims are time-barred.
American General relies on Lott v. Tarver, 741 So.2d 394, 397 (Ala.1999).[7] In Lott, the purchasers (the Lotts) alleged that the sellers (the Tarvers) had misrepresented to them the number of years of payments remaining on a mortgage debt that encumbered the property. This Court held that the period allowed by the statute of limitations for the purchasers to file a fraud action against the sellers had begun to run when the purchasers bought the property, because when they bought it the mortgage was already recorded. This Court concluded that because the recorded mortgage clearly showed the date of the final payment, the purchasers could have, by “simple addition,” determined that the mortgage debt could not be paid off at the point when they said the sellers had told them it would be paid off. Id. at 398. Although the purchasers in Lott were not provided with a copy of the mortgage, the vendor’s-lien deed delivered to them did disclose where the mortgage was recorded. Id. Thus, this Court concluded, knowledge of the contents of the mortgage was, as a matter of law, imputed to the purchasers, by operation of Alabama’s recordation statute, Ala.Code 1975, § 35-4-90.[8] Id
American General also relies on this Court’s decision in Liberty National Life Insurance Co. v. Parker, 703 So.2d 307 (Ala.1997), to support its argument that Reynolds’s fraud claims are time-barred. That reliance is proper. In Parker, this Court held that, as a matter of law, the plaintiffs receipt of a letter concerning an insurance policy was sufficient notice to start the running of the limitations period. Similarly, in this case we conclude that, as a matter of law, Reynolds’s receipt of the loan documents was sufficient notice to start the running of the limitations period. Reynolds argues that the loan documents she received were confusing and did not reasonably indicate that a fraud had occurred; thus, she argues, her receipt of the documents does not warrant a finding that her fraud claims are barred by the limitations period. See Parker, 703 So.2d at 308. Specifically, Reynolds argues that her fraud claims are not barred because the loan documents that she signed and *691 received from American General in 1988 and 1991 did not mention the interest rate.
Justice Johnstone argues in his dissent that the loan documentation could not have placed Reynolds on notice of potential fraud because she, as a lay person, could not have computed from it the actual interest rate being charged. To be put on notice, however, Reynolds did not have to know how to calculate the precise interest rate.
Reynolds received the same documentation at each of the five separate loan transactions. Those loan documents were not vague or ambiguous. They clearly recited the amount of the loan, the amount of each monthly payment Reynolds was to receive from the Sherrins, and the number of months those payments were assigned to American General. More important, each set of loan documents (except, of course, the documents Reynolds received at the first transaction, in April 1988) included the “payoff’ amount of the previous loan transaction. Thus, the balance of Reynolds’s debt to American General was not truly “new information” when she received it from Ms. Skipper in December 1995 (although, of course, the specific amount changes daily). At the latest, then, Reynolds had sufficient information to place her on notice of a potential fraud in May 1991, when she received documentation for the fifth and final loan.
Reynolds testified by deposition that she was able to determine, by “adding up” and “multiplying” the figures contained in the loan documents, that “something was wrong.” Thus, Reynolds’s own testimony demonstrates that she did not need to perform complex mathematical calculations to be put on notice of the alleged fraud. The two-year limitations period, therefore, began to run, at the latest, in 1991 when Reynolds received the last set of loan documents.[9] See Parker, 703 So.2d at 309.
Therefore, we hold that Reynolds’s fraud claims, filed in 1996, are time-barred. Accordingly, we reverse the Court of Civil Appeals’ judgment and remand the case for that court to enter an order consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, LYONS, and BROWN, JJ., concur.
COOK, JOHNSTONE, and ENGLAND, JJ., dissent.

. Some filings in the record spell these names as “Ray Sherrin” and "Leslie Sherrin.”

. The title company sought the amount of the Sherrins' payoff on the note because the Sher-rins were selling the house they had purchased from Reynolds.

. Reynolds later amended her complaint to add a fraud claim based on the allegation that the defendants had “engaged in the fraudulent practice of 'flipping.' "

. See note 6.

. Section 6-2-3 provides:
“In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting fraud, after which he must have two years within which to prosecute his action.”

. Because this action was filed before March 14, 1997, the applicable standard for determining when the two-year period began to run is that provided by Hicks v. Globe Life & Accident Insurance Co., 584 So.2d 458, 463 (Ala.1991), overruled by Foremost Insurance Co. v. Parham, 693 So.2d 409 (Ala.1997).

. Because the Lotts, the plaintiffs in Lott v. Tarver, filed their action before March 14, 1997, we applied the “justifiable reliance” standard to their case. See Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997); and see note 6.

. The Court of Civil Appeals distinguished Lott from this case on the ground that "the loan documents executed by [American General] and Reynolds did not state the interest rate or the total amount to be repaid by Reynolds.” Reynolds v. American Gen. Fin., Inc., 795 So.2d at 685. In fact, the difference is that in Lott the purchasers did not receive a copy of the mortgage. Instead, the plaintiffs were presumed, by operation of the recordation statute, to know of the facts that would have alerted a reasonable person to the existence of the fraud. In this case, the facts that put Reynolds on notice were in her actual possession' from 1988 and 1991, respectively.

. Reynolds also argues that she did not have actual knowledge of the fraud until January 1996, when she was told by the accountant, whom she had asked to examine the loan documents, that the interest rate charged on the loans was more than 20%. This argument is without merit. As we stated in McGowan, "it is the knowledge of such facts that would have alerted a reasonable person to the existence of a potential fraud, and not actual knowledge of the fraud itself, that determines whether the question of the tolling of the limitations period in a fraud case can be decided as a matter of law.” 631 So.2d at 845 (second emphasis added).