795 So.2d 685 (2000)
Ex parte AMERICAN GENERAL FINANCE, INC., Robert D. Faulkner, and James Sloop.
(Re Mary L. Reynolds v. American General Finance, Inc., et al.)
1990532.
Supreme Court of Alabama.
December 1, 2000.
*686 Robert H. Rutherford and F.A. Flowers III of Burr & Forman, L.L.P., Birmingham; Mack B. Binion of Briskman & Binion, P.C., Mobile, for petitioner.
John Ronald Spencer, Mobile; and C.S. Chiepalich, Mobile, for respondents.
SEE, Justice.
The trial court entered a partial summary judgment in favor of the defendants American General Finance, Inc., Robert D. Faulkner, and James Sloop (collectively "American General"), in a fraud action by Mary L. Reynolds. The Court of Civil Appeals reversed that judgment. See Reynolds v. American Gen. Fin., Inc., 795 So.2d 681 (Ala.Civ.App.1999). We granted certiorari review to address the question whether, as a matter of law, the plaintiff Reynolds must be held to have discovered the alleged fraud more than two years *687 before she filed her action; if so, then it is barred by the statute of limitations. See Ala.Code 1975, § 6-2-38 (l) and § 6-2-3. Because we hold that Reynolds's fraud action is barred by the statute of limitations, we reverse the judgment of the Court of Civil Appeals.
In 1985, Mary L. Reynolds bought a house. Six months later, she sold it to Raymond L. Sherrin and Lezlie Taylor Sherrin for $45,000.[1] Reynolds financed the purchase for the Sherrins. They gave her a promissory note for $41,000 and executed to her a mortgage covering the real estate on which the house was located. The note provided for an annual interest rate of 10% and for monthly payments of $359.80. In April 1988, Reynolds contacted Robert Faulkner, an employee of American General, to inquire about borrowing $5,000 from American General. Reynolds testified that Faulkner said American General would charge "20% interest," and that Reynolds could make "a partial payment assignment of [the] payments" she was receiving from the Sherrins under the promissory note and mortgage.
Reynolds met with Faulkner at American General's office and signed two separate, standardized documents. One was entitled, "A Partial Assignment of Promissory Note and Mortgage" and the other was entitled "Settlement Statement." Reynolds admitted that she had the opportunity to read the documents before she signed them, but she stated that she did not do so. She testified, however, that she did ask Faulkner "what it all involved," and that Faulkner responded by saying that "it just had the amount of monthly notes on it, you know, how many notes that it would take to pay that back." The Partial Assignment of Promissory Note and Mortgage states that Reynolds assigns "for a period of 17 months" all her rights, title, and interest in the promissory note and the mortgage the Sherrins had given her. The Settlement Statement lists the "Sale Price" as $5,214.57, and expenses in the amount of $75 for an appraisal fee, $107.50 as a title-policy fee, and $8.50 as a recording fee, and the Settlement Statement is silent as to the interest rate. Reynolds left American General's office with a check for $5,023.57 and copies of the Partial Assignment and the Settlement Agreement.
In May 1988, Reynolds again telephoned Faulkner and requested an additional $5,000. Reynolds testified that Faulkner told her over the telephone that "the same terms" (including the 20% interest rate) would apply. Reynolds went to American General's office on May 20, 1988, and signed another Partial Assignment and another Settlement Statement, those documents containing in substance the same language as that contained in the earlier documents. As a result of this second transaction, the first loan was "paid off," Reynolds received an additional $5,000, and she assigned her rights, title, and interest in the Sherrins' promissory note and mortgage "for a period of 38 months."
In July 1988, Reynolds and American General entered into a third similar loan transaction. Reynolds received an additional $5,000, the second loan was paid off, and she assigned the Sherrins' payments to American General "for a period of 76 months." In December 1988, Reynolds and American General entered into a fourth similar loan transaction, in which Reynolds received an additional $1,000, the third loan was paid off, and Reynolds assigned the Sherrins' payments to American General "for a period of 87 months." *688 All four of these loan transactions were handled by Faulkner. After each transaction, Reynolds received a copy of the Partial Assignment and a copy of the Settlement Statement for that transaction.
In May 1991, Reynolds telephoned American General and spoke with James Sloop, another employee of American General. Reynolds told Sloop about the previous agreements and told him she needed $500. Reynolds and American General entered into a fifth similar loan transaction. Reynolds received a copy of the Partial Assignment and the Settlement Statement from the fifth and final loan transaction.
In 1995, the Sherrins decided to sell the house. Reynolds received a telephone call from a title company asking her for the "payoff," or balance owed, on the mortgage.[2] Reynolds told the title company that she did not know the payoff amount and would have to telephone American General for that information. Reynolds telephoned American General for the payoff amount, and she spoke with employee Tracy Skipper. Ms. Skipper told Reynolds that the Sherrins owed approximately $27,000 to her and an additional $10,000 to American General. Reynolds did not agree with the payoff amount Skipper gave her, so she tried to calculate it herself, and concluded "something was wrong." Reynolds later contacted American General and told Skipper that she "didn't agree with the payoff' figure.
Reynolds also contacted an attorney and an accountant. Reynolds gave the accountant all the loan documents she had received from American General. The accountant reviewed the documents and told Reynolds that the interest rate on the loans "was more than 20%."
On August 7, 1996, more than eight years after the first transaction had closed, and more than five years after the final transaction had closed, Reynolds sued American General, Faulkner, and Sloop, alleging several species of fraud.[3] The trial court entered a summary judgment in favor of American General, Faulkner, and Sloop on all of Reynolds's claims related to the first four loan transactions, "based upon the statute of limitations[,] given [Reynolds's] own admission that she had the same documentation and information in 1988 and 1991 that she states put her on notice of the alleged fraud in 1996 leading to filing of this action." The trial court denied the defendants' motion for summary judgment as it related to Reynolds's fraud claims based on the fifth and final loan transaction, which had occurred in May 1991. The trial court entered a final judgment, pursuant to Rule 54(b), Ala. R.Civ.P., as to all of Reynolds's claims based on the first four loan transactions. Reynolds's claims with respect to the fifth and final loan transaction are still pending before the trial court.
The Court of Civil Appeals reversed the summary judgment, holding that "the question whether Reynolds justifiably[[4]] relied upon Faulkner's alleged representations, so that the running of the limitations period was tolled, is to be determined by a jury." Reynolds v. American Gen. Fin., Inc., 795 So.2d at 685.
American General argues that the Court of Civil Appeals erred in reversing the partial summary judgment. It argues that *689 Reynolds's fraud claims are barred, as a matter of law, by the statute of limitations, because, it contends, the loan documents Reynolds received were sufficient to put a reasonable person on notice of the alleged fraud, specifically, that the documents provided notice that the interest rate charged on the loans exceeded the amount represented. We agree.
This Court reviews a summary judgment de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). When a defendant bases its motion for a summary judgment on an affirmative defense, such as the statute of limitations, as American General has done in this case, this Court applies the following standard of review:
"`When there is no genuine issue of material fact as to any element of an affirmative defense, ... and it is shown that the defendant is entitled to a judgment as a matter of law, summary judgment is proper. If there is a genuine issue of material fact as to any element of the affirmative defense, summary judgment is inappropriate. Rule 56(c), Ala.R.Civ.P. In determining whether there is a genuine issue of material fact as to each element of an affirmative defense, this Court must review the record in a light most favorable to the plaintiff (the nonmoving party) and must resolve all reasonable doubts against the defendant (the movant).'"
Bechtel v. Crown Cent. Petroleum Corp., 495 So.2d 1052, 1053 (Ala.1986).
An action alleging fraud is subject to a two-year statute of limitations. Ala. Code 1975, § 6-2-38 (l). "The two-year period does not start to run until the plaintiff has actual knowledge of facts that would ... put a reasonable person on notice of the fraud." Liberty Nat'l Life Ins. Co. v. Parker, 703 So.2d 307, 308 (Ala.1997) (citing Ala.Code 1975, § 6-2-3[5]; Hicks v. Globe Life & Acc. Ins. Co., 584 So.2d 458, 463 (Ala.1991)[6]).
The question when the plaintiff discovered or should have discovered the fraud for statute-of-limitations purposes is generally one for the jury. Parker, 703 So.2d at 308. However, this Court has recognized that "there are times when this question is removed from the purview of the jury" and can be decided as a matter of law. Kelly v. Connecticut Mut. Life Ins. Co., 628 So.2d 454, 458 (Ala.1993). "The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud." Hicks, 584 So.2d at 463. This Court has explained that "it is the knowledge of such facts that would have alerted a reasonable person to the existence of a potential fraud, and not actual knowledge of the fraud itself, that determines whether the question of the tolling of the limitations period in a fraud case [under § 6-2-3] can be decided as a matter of law." McGowan v. Chrysler Corp., 631 So.2d 842, 845 (Ala. 1993). "As a corollary to this rule, `[w]e have held that fraud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the *690 fraud reasonably should be discovered.'" Kelly, 628 So.2d at 458 (quoting Hickox v. Stover, 551 So.2d 259, 262 (Ala.1989), overruled by Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997)). This corresponding rule does not apply where the documents "are vague or ... do not reasonably indicate that a fraud has occurred, based on the circumstances of [the] case." Id.
American General argues that the loan documents Reynolds received from American General in 1988 and 1991 were sufficient to lead her to discover the alleged fraud because these very same documents, by Reynolds's own admission, led her to the actual discovery of the alleged fraud in December 1995, when she says she read the documents for the first time. Therefore, American General argues, her claims are time-barred.
American General relies on Lott v. Tarver, 741 So.2d 394, 397 (Ala.1999).[7] In Lott, the purchasers (the Lotts) alleged that the sellers (the Tarvers) had misrepresented to them the number of years of payments remaining on a mortgage debt that encumbered the property. This Court held that the period allowed by the statute of limitations for the purchasers to file a fraud action against the sellers had begun to run when the purchasers bought the property, because when they bought it the mortgage was already recorded. This Court concluded that because the recorded mortgage clearly showed the date of the final payment, the purchasers could have, by "simple addition," determined that the mortgage debt could not be paid off at the point when they said the sellers had told them it would be paid off. Id. at 398. Although the purchasers in Lott were not provided with a copy of the mortgage, the vendor's-lien deed delivered to them did disclose where the mortgage was recorded. Id. Thus, this Court concluded, knowledge of the contents of the mortgage was, as a matter of law, imputed to the purchasers, by operation of Alabama's recordation statute, Ala.Code 1975, § 35-4-90.[8]Id.
American General also relies on this Court's decision in Liberty National Life Insurance Co. v. Parker, 703 So.2d 307 (Ala.1997), to support its argument that Reynolds's fraud claims are time-barred. That reliance is proper. In Parker, this Court held that, as a matter of law, the plaintiff's receipt of a letter concerning an insurance policy was sufficient notice to start the running of the limitations period. Similarly, in this case we conclude that, as a matter of law, Reynolds's receipt of the loan documents was sufficient notice to start the running of the limitations period. Reynolds argues that the loan documents she received were confusing and did not reasonably indicate that a fraud had occurred; thus, she argues, her receipt of the documents does not warrant a finding that her fraud claims are barred by the limitations period. See Parker, 703 So.2d at 308. Specifically, Reynolds argues that her fraud claims are not barred because the loan documents that she signed and *691 received from American General in 1988 and 1991 did not mention the interest rate.
Justice Johnstone argues in his dissent that the loan documentation could not have placed Reynolds on notice of potential fraud because she, as a lay person, could not have computed from it the actual interest rate being charged. To be put on notice, however, Reynolds did not have to know how to calculate the precise interest rate.
Reynolds received the same documentation at each of the five separate loan transactions. Those loan documents were not vague or ambiguous. They clearly recited the amount of the loan, the amount of each monthly payment Reynolds was to receive from the Sherrins, and the number of months those payments were assigned to American General. More important, each set of loan documents (except, of course, the documents Reynolds received at the first transaction, in April 1988) included the "payoff" amount of the previous loan transaction. Thus, the balance of Reynolds's debt to American General was not truly "new information" when she received it from Ms. Skipper in December 1995 (although, of course, the specific amount changes daily). At the latest, then, Reynolds had sufficient information to place her on notice of a potential fraud in May 1991, when she received documentation for the fifth and final loan.
Reynolds testified by deposition that she was able to determine, by "adding up" and "multiplying" the figures contained in the loan documents, that "something was wrong." Thus, Reynolds's own testimony demonstrates that she did not need to perform complex mathematical calculations to be put on notice of the alleged fraud. The two-year limitations period, therefore, began to run, at the latest, in 1991 when Reynolds received the last set of loan documents.[9] See Parker, 703 So.2d at 309.
Therefore, we hold that Reynolds's fraud claims, filed in 1996, are time-barred. Accordingly, we reverse the Court of Civil Appeals' judgment and remand the case for that court to enter an order consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, LYONS, and BROWN, JJ., concur.
COOK, JOHNSTONE, and ENGLAND, JJ., dissent.
JOHNSTONE, Justice (dissenting).
The main opinion holds, in essence, that the plaintiff's paperwork put her on notice that, although American General had represented a 20% interest rate to the plaintiff, American General was charging the plaintiff several percentage points more interest, and the main opinion observes that the plaintiff received this paperwork much more than two years before she filed her lawsuit. This dissent will demonstrate that the paperwork did not put her on notice of the disparity between the interest rate represented and the interest rate actually charged and that only an event less than two years before she filed the lawsuit alerted her to the disparity.
*692 As the main opinion explains, American General made a series of five loans to the plaintiff. None of the debts for any of these loans is evidenced by a promissory note. Instead, each loan is memorialized by two documentsa "Settlement Statement" and "A Partial Assignment of Promissory Note and Mortgage." American General used the same preprinted "Settlement Statement" form and the same "A Partial Assignment of Promissory Note and Mortgage" form for all five loans. Only the entries in the blanks in the forms differ from loan to loan.
The reference to a promissory note in the "A Partial Assignment of Promissory Note and Mortgage" form is a reference to the note made by the Sherrins to the plaintiff, not a reference to any note made by the plaintiff to American General. I repeat that American General did not use any promissory note to evidence the plaintiffs debt to American General.
I attach as Exhibit A to this dissent copies of the paperwork memorializing the first loan and as Exhibit B copies of the paperwork memorializing the fifth and the last loan as fair samples of what the plaintiff received to put her on notice or not to put her on notice. While the paperwork recites the Sherrins' 10% interest rate, nowhere does the paperwork recite any rate for the interest being charged the plaintiff. Likewise, none of the documents supplied by American General to the plaintiff identifies any entry as either the payoff balance or the new amount of any of the successive loans by American General to the plaintiff. I respectfully challenge the reader to calculate from the data entered in the paperwork for each loan what interest rate American General was charging the plaintiff. Those readers who are mathematicians, bankers, or accountants may accomplish the feat.
The issue is, though, whether, as a matter of law, this paperwork put the plaintiff, as a layperson, on notice of the disparity between the 20% interest rate represented by American General and the several-points-higher interest rate actually charged the plaintiff by American General. Surely not.
The event which alerted the plaintiff that "something was wrong" did not occur until December 1995, less than two years before the August 7, 1996, date when the plaintiff filed her action against the defendants. This event was American General's employee Ms. Skipper's report to the plaintiff of not only the payoff balance of the Sherrins' debt to the plaintiff but also the payoff balance of the plaintiffs own debt to American General. Only this newly acquired information suggested a disparity a disparity between and among the great amount still owed by the plaintiff to American General, the amount already received by American General from Sherrins' payments, and the 20% interest rate previously represented to the plaintiff by American General. Even so, the plaintiff needed the services of an accountant analyzing her paperwork to learn that her suspicions were valid.
The most critical part of Ms. Skipper's report to the plaintiff, the balance of the plaintiffs own debt owed to American General, was new information to the plaintiff when she received it from Ms. Skipper in December 1995. The plaintiff could not have calculated her own balance owed to American General by simply subtracting from her original debt to American General the total it would have received in Sherrin mortgage payments over the intervening months inasmuch as the plaintiff's own debt over the same period would have been supplemented by the interest accruing at whatever rate American General was actually charging the plaintiff. Moreover, the plaintiff could not know what American General would claim the plaintiff's *693 unpaid balance to be until Ms. Skipper told the plaintiff in December 1995.
Because the loan paperwork, by itself, did not reveal the "facts that would have alerted a reasonable person to the existence of a potential fraud," McGowan v. Chrysler Corp., 631 So.2d 842, 845 (Ala. 1993) (emphasis omitted), and because the plaintiff did not learn such facts until she received the report from Ms. Skipper less than two years before the plaintiff filed her civil action, it was not barred by the statute of limitations. Thus, I respectfully submit we should affirm the Court of Civil Appeals in its reversal of the partial summary judgment entered by the trial court in favor of the defendants.
COOK, J., concurs.
*694
 SETTLEMENT STATEMENT
DATE: April 22, 1988
SELLERS: Mary L. Reynolds 
NAMES: Raymond Lewis Sherrin and Leslie Taylor Sherrin 
ADDRESS: P.O. Box 465 Point Clear. Al. 36564 
PHONE NUMBER: _____________________________________________________________
 FIRST OR SECOND
PROPERTY ADDRESS: Rt 2 Box 447 A Fairhope. Al. 36532 
 SALE PRICE $5214.57 
APPRAISAL 75.00 
TITLE OPINION _____ 
TITLE POLICY 107.50 
RECORDING FEES 8.50 
OTHER EXPENSES ______ 
TOTAL EXPENSES 191.00 
 NET PURCHASE PRICE $5023.57 
 THE UNDERSIGNED ASSIGNOR, OR ASSIGNORS, SEPARATELY, SEVERALLY AND JOINTLY,
DO HEREBY WARRANT, GUARANTEE, REPRESENT AND PROMISE AS FOLLOWS:
 1. THE MORTGAGE AND MORTGAGE DEBT ARE FREE AND CLEAR ON ANY COUNTERCLAIM,
OBJECTION DEFENSE, OR IMPAIRMENT OF ANY NATURE WHATSOEVER, AND PARTICULARLY THE
INDEBTEDNESS IS NOT SUBJECT TO ANY CHARGE OF USURY. THERE HAS BEEN NO SETTLEMENT
PAYMENT, COMPROMISE, OR ADJUSTMENT IN RESPECT TO THE MORTGAGE OR THE MORTGAGE
INDEBTEDNESS AND THERE HAS BEEN MADE NO SPECIAL PROMISE OF CONSIDERATION OF ANY
NATURE TO THE MORTGAGORS HEREIN.
 2. THE MORTGAGE, MORTGAGE NOTE AND ASSIGNMENT, AND EACH AND EVERY DOCUMENT,
AGREEMENT OR WRITING TO THIS TRANSACTION ARE TRUE, CORRECT, ACCURATE, VALID AND
CURRENT. THE CURRENT BALANCE HAS BEEN ACCURATELY STATED AS $ 40,430.78 
AND AS SET FORTH IN THE NOTE AND MORTGAGE. THE NEXT INSTALLMENT DUE IS
 May 5, 1988 AND THERE IS NO DISPUTE, CHANGE OR ALTERATION FROM THE
INFORMATION REFLECTED HEREIN OR THE STATUS THEREOF.
 3. THE MORTGAGE, MORTGAGE NOTE AND OTHER LEGAL DOCUMENTS AND AGREEMENTS
INVOLVED IN THIS TRANSACTION ARE LEGAL AND BINDING IN EVERY RESPECT, FULLY
ENFORCEABLE AT LAW, THE SIGNATURES THEREON BEING GENUINE, AND THE PARTIES THERETO
HAVING THE FULL LEGAL CAPACITY TO MAKE SUCH AGREEMENTS AND SUBSCRIBED THEIR SIGNATURE
AND EACH AND EVERY MAKER HAS THE LEGAL CAPACITY TO BIND HIMSELF TO THE
OBLIGATIONS AND PROMISES THERE IN CONTAINED.
 4. IN THE EVENT THE UNDERSIGNED, SEPARATELY, SEVERALLY OR JOINTLY, BREACH
THESE UNDERTAKINGS OR PROMISES IN ANY RESPECT, THEN, UPON DEMAND, UPON ANY OR
ALL OF THEM, ALL OF THEM SHALL BE REQUIRED, SEPARATELY AND SEVERALLY, TO REPURCHASE
THE MORTGAGE AND MORTGAGE INDEBTEDNESS.
 5. THE REPURCHASE PRICE SHALL BE CALCULATED SO THAT CREDITHRIFT OF AMERICA,
INC. WILL RECEIVE AN AMOUNT EQUAL TO ITS ORIGINAL INVESTMENT IN SAID ACCOUNT
ADJUSTED FOR COLLECTIONS MADE WHICH HELD BY CREDITHRIFT OF AMERICA, INC., IN AN
AMOUNT EQUAL TO THE RATE WHICH WAS ANTICIPATED BY THE ORIGINAL PURCHASE PRICE HAD
THE ACCOUNT BEEN HELD TO MATURITY.
 6. CREDITHRIFT OF AMERICA, INC. IS UNDER NO OBLIGATION TO RESALE ANY
MORTGAGE OR ANY PART OF ANY MORTGAGE BACK TO THE SELLER AT ANY TIME.
 GIVEN UNDER THE RESPECTIVE HANDS AND SEALS OF EACH OF THE UNDERSIGNED THIS
 22 DAY OF April . 19 88 .
WITNESSES:
 
___________________________ ___________________________
 Mary L. Reynolds
___________________________ ___________________________
 SELLERS
STATE OF Alabama 
COUNTY OF Baldwin 
 PERSONALLY APPEARED BEFORE ME Mary L. Reynolds ,
WHO BEING TO ME WELL KNOWN AND KNOWN BY ME TO BE THE INDIVIDUALS DESCRIBED IN AND
WHO EXECUTED THE ABOVE FOREGOING INSTRUMENT AND THEY ACKNOWLEDGED BEFORE ME THAT
THEY SIGNED, SEALED AND DELIVERED THE SAME AT THE TIME AND PLACE, IN THE MANNER
AND FOR THE USES AND PURPOSES AS THEREIN SET FORTH AND CONTAINED.
*695
WITNESS MY HAND AND OFFICIAL SEAL ON THIS 22 DAY OF 
19 88.
 
 _______________________________________________________
 NOTARY PUBLIC IN AND FOR THE STATE AND COUNTY AFORESAID
 MY COMMISSION EXPIRES: May 14, 1990 
*696
 A PARTIAL ASSIGNMENT OF PROMISSORY NOTE AND MORTGAGE
 Witness this agreement entered into on the 22 day of April .
 1988 by and between Mary L. Reynolds 
parties of the first part, and CREDITHRIFT OF AMERICA, INC., a corporation,
party of the second part as follows:
 WHEREAS, party of the first part, Mary L. Reynolds, a divorced and not remarried
 woman , is the holder of a promissory note dated the 6 day of
 December , 19 85, executed by Raymond Lewis Sherrin and Leslie Taylor Sherrin
 husband and wife, which said promissory note is secured by a mortgage of even
date therewith, executed by Raymond Lewis Sherrin and Leslie Taylor Sherrin husband & wife
against the following property situated in the County of Baldwin .
State of Alabama , and more particularly described as follows:
Lot 202, Subdivision as and called Eastern Shore Parkway #1, according to the plat
thereof recorded in Map Book 1, pages 156-157 of the records in the Office of the Judge of
Probate, Baldwin County, Alabama:
EXCEPTING THEREFROM such oil, gas and other minerals in, on and under said real property,
together with all rights in connection therewith, as have previously been reserved by
or conveyed to others:
 Which said mortgage is recorded in Real Property Book 234 , Page 1192 ,
et seq., in the records of the Office of the Judge of the Probate Court of
 Baldwin County, Alabama, which said note and mortgage originally
secured the sum of Forty-one Thousand and 00/100 ($41,000.00)_____ DOLLARS,
plus interest at the rate of Ton (101) per annum, to be amortized according
to a schedule set forth in said mortgage:
 And, WHEREAS, the said party of the first part wishes to make the party
of the second part a partial Assignment of the said promissory note and the
mortgage securing the same:
 Now therefore, for and in consideration of TEN AND NO/100 ($10.00) DOLLARS,
and other good and valuable consideration, the receipt in sufficiency of which
is hereby acknowledged:
 And in consideration of the premises, and the mutual promises covenants
and conditions hereinafter set forth, the parties hereto do hereby contract,
covenant and agree as follows:
 1) The said parties of the first part does hereby grant,
bargain, sell, convey and assign unto CREDITHRIFT OF AMERICA, INC., a corporation,
party of the second part, all of their rights, title, interest, for
a period of 17 months from and after date, in and to said note and mortgage
hereinabove described, together with the debt secured thereby during the said
 17 months: and as part and partial of the consideration of this agreement,
the said party of the first part does hereby subordinate all of his interest,
for a period of 17 months from and after date, to the interest held and
assigned by this instrument to CREDITHRIFT OF AMERICA, INC., a corporation,
party of the second, including, but not limited to the following:
 a) that CREDITHRIFT OF AMERICA, INC., a corporation, shall have
the perogative, as provided by said mortgage to, upon default, exercise any
and all rights of the mortgages thereunder:
 b) it is further agreed and understood by and among all parties
that CREDITHRIFT OF AMERICA, INC., a corporation, shall prior to the institution
of any proceedings, whether judicial or nonjudicial under the said note, notify
the party of the first part of the occurance of the default in payments. Said
notice shall be given two (2) weeks prior to the institution of any such proceedings.
 c) that upon the issuance of any such notice as hereinabove provided,
said parties of the first part Mary L. Reynolds, a divorced and not remarried 
 woman shall have the option of tendering
*697
unto CREDITHRIFT OF AMERICA, INC., a corporation, the total remaining
balance due on said note and mortgage. In such event, the said party of
the second part shall reassign all of its rights, title and interest in
the note and mortgage to the party of the first part.
 d) it is fullyagreed and understood among all the parties
that by virtue of the subordination of the right, title and interest of the
parties of the first part, namely, Mary L. Reynolds, a divorced and not remarried
 woman to the period of interest assigned and that should the said
party of the second part, CREDITHRIFT OF AMERICA, INC., a corporation, institute
foreclosure proceedings on the said mortgage, that the interest of
Mary L. Reynolds, a divorced and not remarried woman parties of the first
part, in the remaining months of the note and mortgage will be treated as a
totally subordinate mortgage, and as such, may and will be eradicated by the
foreclosure proceedings of the party of the second part. It is additionally
agreed and understood among all the parties and CREDITHRIFT OF AMERICA, INC.,
a corporation, is under no obligation to provide fire and hazard or any
other insurance on said premises, and that such insurance will be maintained
according to the tenor of the original mortgage by the Grantor, namely Raymond
Lewis Sherrin and Leslie Taylor Sherrin husband & wife and upon distruction
of said premises, that this instrument will act as an assignment of the proceeds
of any insurance or other recovery by the said Mary L. Reynolds, & divorced and
not remarried woman to CREDITHRIFT OF AMERICA, INC., a corporation
for the balance of the dollar amount assigned and conveyed to CREDITHRIFT OF
AMERICA, INC., a corporation, by this instrument, being calculable by the number
of monthly payments as called for in the mortgage and accompanying
promissory note for the said 17 month period of this assignment.
 2) Party of the first part covenents, represents and warrants as to
the mortgage and note sold and assigned hereunder:
 a) that said mortgage is a good and valid instrument and constitutes
a valid lien against the real property described therein:
 b) that party of the first part is vested with a full and
absolute title to said mortgage and note and has authority to assign and
transfer the same, which is presently free and clear of all encumbrances.
 c) There are no defaults existing at the present time under
any of the covenents contained in said mortgage and note:
 d) there are no defenses against said mortgage and note;
and the mortgage and note were not originated in a manner which violated,
or now violates any Federal, State or local laws, ordinances, regulations,
or rulings including, with limitations, Federal and State truth in lending
laws and any other consumer protection laws, all Federal and State equal
credit opportunity laws, any applicable State usury laws.
 e) There are no undisclosed agreements between any of the
mortgagors and the mortgages concerning any facts or conditions for the
past, present or the future which might in any way effect the obligations
of the mortgagors to make timely payments thereon.
 f) The total present unpaid balance of the mortgage in Forty Thousand
Four Hundred Thirty and 78/100 ($40,430.78)__________ Dollars, and the next
monthly mortgage payment on the mortgage loan is the amount of Three Hundred 
fifty nine and 80/100 ($359.80)___Dollars and is due and payable on
the 5 day of May , 19 88.
 g) Owner does not in any ordinary course of business regularly
extend or arrange for extension of consumer credit.
 3) CREDITHRIFT OF AMERICA, INC., a corporation, party of the second part
agrees to service the mortgage and note so long as any installment due to
CREDITHRIFT OF AMERICA, INC., a corporation, remains unpaid; and to exert
reasonable collection efforts to insure that the mortgagors make timely payments
due unto the mortgage note. Party of the first part does hereby designate
party of the second part as its agent for collection of monies
due to the party of the first part in connection with a full payoff of the
mortgage loan and note. Should the mortgagors, or their assignees, make all
payments due to party of the second part in a timely manner during the said
 17 months of this assignment, at the conclusion of such 17 month
period, CREDITHRIFT OF AMERICA, INC., a corporation, shall execute an absolute
assignment of such mortgage and note back to the party of the first part and
*698
advise the mortgagors under the mortgage, or their assignees, to make the
payments under the said mortgage and note due in the future to the party of
the first part.
 4) Party of the first part agrees to endemnify and save CREDITHRIFT
OF AMERICA, INC., a corporation, harmless from and against and all loss,
damage, and liability, and expense (including reasonable attorney's fees and
cost of litigation) sustained or incurred by CREDITHRIFT OF AMERICA, INC.,
a corporation, arising out of or based upon, the inaccuracy or breach of
any warranty or representation made by the party of the first part hereunder
to CREDITHRIFT OF AMERICA, INC., a corporation, under this agreement.
 5) Time shall always be of the essence of this agreement and this agreement
shall ennure and be binding upon the respective heirs, representatives,
administrators, successors and assigns, of the parties hereto.
 WITNESS our hands and seals this 22 day of April , 19 88.
 
 ___________________________
 Mary L. Reynolds
 ___________________________
 CREDITHRIFT OF AMERICA, INC., a Corporation
 Party of the Second Part
 BY: 
 Its Branch Manager
State of Alabama 
County of Baldwin 
 Before me, the undersigned, a Notary Public in and for said State and
County, personally appeared Mary L. Reynolds 
___________________________ whose names are signed to the foregoing instrument
and who are known to me, who after by me being first duly sworn on oath did
depose and say that being informed of the contents of said conveyance, they
executed the same voluntarily on the day the same bears date.
 Given under my hand and notorial seal on this the 22 day of April
________ 1988.
 
 Notary Public, State of Alabama
 At Large
THIS INSTRUMENT PREPARED BY:
 Kandi D. Mitchell
 Credithrift of America, Inc.
 Seacliff Bldg. 98 Hwy 98
 P.O. Box 1183
 Daphne, AL. 36526
*699
 SETTLEMENT STATEMENT
DATE: May 15, 1991
SELLERS: Mary L. Reynolds 
NAMES: Raymond L. Sherrin and Lozlie Sherrin 
ADDRESS: P.O. Box 465 Point Clear. AL. 36564 
PHONE NUMBER: (205)928-1942 
 FIRST OR SECOND
PROPERTY ADDRESS: Rt. 2 Box 477 Fairhope, Alabama 36532 
 SALE PRICE $ 16,870.55 
APPRAISAL $ -0- 
TITLE OPINION $ -0- 
TITLE POLICY $ -0- 
RECORDING FEES $ -0- 
OTHER EXPENSES $ 16,370.55 American General Finance-Payoff
TOTAL EXPENSES $ 16,370.55 
 NET PURCHASE PRICE $ 500.00 
 THE UNDERSIGNED ASSIGNOR, OR ASSIGNORS, SEPARATELY, SEVERALLY AND JOINTLY,
DO HEREBY WARRANT, GUARANTEE, REPRESENT AND PROMISE AS FOLLOWS:
 1. THE MORTGAGE AND MORTGAGE DEBT ARE FREE AND CLEAR ON ANY COUNTERCLAIM,
OBJECTION DEFENSE, OR IMPAIRMENT OF ANY NATURE WHATSOEVER, AND PARTICULARLY THE
INDEBTEDNESS IS NOT SUBJECT TO ANY CHARGE OF USURY. THERE HAS BEEN NO SETTLEMENT
PAYMENT, COMPROMISE, OR ADJUSTMENT IN RESPECT TO THE MORTGAGE OR THE MORTGAGE
INDEBTEDNESS AND THERE HAS BEEN MADE NO SPECIAL PROMISE OF CONSIDERATION OF ANY
NATURE TO THE MORTGAGORS HEREIN.
 2. THE MORTGAGE, MORTGAGE NOTE AND ASSIGNMENT, AND EACH AND EVERY DOCUMENT,
AGREEMENT OR WRITING TO THIS TRANSACTION ARE TRUE, CORRECT, ACCURATE, VALID AND
CURRENT. THE CURRENT BALANCE HAS BEEN ACCURATELY STATED AS $ 39,444.10 
AND AS SET FORTH IN THE NOTE AND MORTGAGE. THE NEXT INSTALLMENT DUE IS
 June 5, 1991 AND THERE IS NO DISPUTE, CHANGE OR ALTERATION FROM THE
INFORMATION REFLECTED HEREIN OR THE STATUS THEREOF.
 3. THE MORTGAGE, MORTGAGE NOTE AND OTHER LEGAL DOCUMENTS AND AGREEMENTS
INVOLVED IN THIS TRANSACTION ARE LEGAL AND BINDING IN EVERY RESPECT, FULLY
ENFORCEABLE AT LAW, THE SIGNATURES THEREON BEING GENUINE, AND THE PARTIES THERETO
HAVING THE FULL LEGAL CAPACITY TO MAKE SUCH AGREEMENTS AND SUBSCRIBED THEIR SIGNATURE
AND EACH AND EVERY MAKER HAS THE LEGAL CAPACITY TO BIND HIMSELF TO THE
OBLIGATIONS AND PROMISES THERE IN CONTAINED.
 4. IN THE EVENT THE UNDERSIGNED, SEPARATELY, SEVERALLY OR JOINTLY, BREACH
THESE UNDERTAKINGS OR PROMISES IN ANY RESPECT, THEN, UPON DEMAND, UPON ANY OR
ALL OF THEM, ALL OF THEM SHALL BE REQUIRED, SEPARATELY AND SEVERALLY, TO REPURCHASE
THE MORTGAGE AND MORTGAGE INDEBTEDNESS.
 5. THE REPURCHASE PRICE SHALL BE CALCULATED SO THAT AMERICAN GENERAL
FINANCE, INC., WILL RECEIVE AN AMOUNT EQUAL TO ITS ORIGINAL INVESTMENT IN SAID
ACCOUNT ADJUSTED FOR COLLECTIONS MADE WHILE HELD BY AMERICAN GENERAL FINANCE,
INC., IN AN AMOUNT EQUAL TO THE RATE WHICH WAS ANTICIPATED BY THE ORIGINAL PURCHASE
PRICE HAD THE ACCOUNT BEEN HELD TO MATURITY.
 6. AMERICAN GENERAL FINANCE, INC., IS UNDER NO OBLIGATION TO RESALE ANY
MORTGAGE OR ANY PART OF ANY MORTGAGE BACK TO THE SELLER AT ANY TIME.
 GIVEN UNDER THE RESPECTIVE HANDS AND SEALS OF EACH OF THE UNDERSIGNED THIS
 15th DAY OF May , 19 91 .
WITNESS:
 
___________________ ________________
 Mary L. Reynolds
___________________ ________________
 SELLERS
STATE OF Alabama 
COUNTY OF Baldwin 
 PERSONALLY APPEARED BEFORE ME Mary L. Reynolds .
WHO BEING TO ME WELL KNOWN AND KNOWN BY ME TO BE THE INDIVIDUALS DESCRIBED IN
AND WHO EXECUTED THE ABOVE FOREGOING INSTRUMENT AND THEY ACKNOWLEDGED BEFORE
ME THAT THEY SIGNED, SEALED AND DELIVERED THE SAME AT THE TIME AND PLACE. IN
THE MANNER AND FOR THE USES AND PURPOSES AS THEREIN SET FORTH AND CONTAINED.
WITNESS MY HAND AND OFFICIAL SEAL ON THIS 15th DAY OF May 19 91 .
 _____________________________________________
 NOTARY PUBLIC IN AND FOR THE STATE AND COUNTY
 AFORESAID
 My Commission Expires_________________
*700
 A PARTIAL ASSIGNMENT OF PROMISSORY NOTE AND MORTGAGE
 Witness this agreement entered into on the 15th day of May .
19 91 by and between Mary L. Reynolds, a divorced and not remarried woman 
parties of the first part, and AMERICAN GENERAL FINANCE, INC., a corporation,
party of the second part as follows:
 WHEREAS, party of the first part, Mary L. Reynolds, a divorced and not remarried
 woman , is the holder of a promissory note dated the 6th day of
 December , 19 85 , executed by Raymond Lewis Sherrin and Lezlie Taylor
 Sherrin , which said promissory note is secured by a mortgage of even
date therewith, executed by Raymond Lewis Sherrin and Lezlie Taylor Sherrin, husband and
wife against the following property situated in the County of Baldwin ,
State of Alabama . and more particularly described as follows:
 Lot 202, Subdivision as and called EASTERN SHORE PARKWAY #1, according to the plat
 thereof recorded in Map Book1, pages 156-157 of the records in the Office of the
 Judge of Probate, Baldwin County, Alabama.
 Which said mortgage is recorded in Real Property Book 234 Page 1192.
et seq., in the records of the Office of the Judge of the Probate Court of
 Baldwin County, Alabama, which said note and mortgage originally
secured the sum of Forty-One Thousand and 00/100 ($41,000.00) DOLLARS,
plus interest at the rate of Ten (10.00%) per annum, to be amortized according
to a schedule set forth in said mortgage:
 And, WHEREAS, the said party of the first part wishes to make the party
of the second part a Partial Assignment of the said promissory note and the
mortgage securing the same:
 Now therefore, for and in consideration of TEN AND NO/100 ($10.00) DOLLARS,
and other good and valuable consideration, the receipt in sufficiency of which
is hereby acknowledged;
 And in consideration of the premises, and the mutual promises covenants
and conditions hereinafter set forth, the parties hereto do hereby contract,
covenant and agree as follows:
 1) The said parties of the first part does hereby grant, bargain, sell,
convey and assign unto AMERICAN GENERAL FINANCE, INC., a corporation, party
of the second part, all of their rights, title, interest, for a period of
 92 months from and after date, in and to said note and mortgage hereinabove
described, together with the debt secured thereby during the said,
 92 months; and as part and partial of the consideration of this agreement,
the said party of the first part does hereby subordinate all of his
interest, for a period of 92 months from and after date, to the interest
held and assigned by this instrument to AMERICAN GENERAL FINANCE, INC., a
corporation, party of the second, including, but not limited to the following:
 a) that AMERICAN GENERAL FINANCE, INC., a corporation, shall have the
perogative, as provided by said mortgage to, upon default, exercise any and
all rights of the mortgages thereunder;
 b) it is further agreed and understood by and among all parties that
AMERICAN GENERAL FINANCE, INC., a corporation, shall prior to the institution
of any proceedings, whether judicial or nonjudicial under the said note, notify
the party of the first part of the occurance of the default in payments. Said
notice shall be given two (2) weeks prior to the institution of any such proceedings.
 c) that upon the issuance of any such notice as hereinabove provided,
said parties of the first part Mary L. Reynolds, a divorced and not remarried woman
shall have the option of tendering unto AMERICAN GENERAL FINANCE, INC., a
corporation, the total remaining balance due on said note and mortgage. In such
event, the said party of the second part shall reassign all of its rights, title
and interest in the note and mortgage to the party of the first part.
 d) it is fully agreed and understood among all the parties that by virtue
of the subordination of the rights, title and interest of the parties of the
first part, namely, Mary L. Reynolds, a divorced and not remarried woman 
to the period of interest assigned and that should the said party of the second
part, AMERICAN GENERAL FINANCE, INC., a corporation, institute foreclosure proceedings
on the said mortgage, that the interest of Mary L. Reynolds, a divorced and not,
 remarried woman parties of the first part, in the remaining
months of the note and mortgage will be treated as a totally subordinate
*701
mortgage, and as such, may and will be eradicated by the foreclosure proceedings
of the party of the second part. It is additionally agreed and understood among
all the parties and AMERICAN GENERAL FINANCE, INC., a corporation, is under no
obligation to provide fire and hazard or any other insurance on said premises,
and that such insurance will be maintained according to the tenor of the original
mortgage by the Grantor, namely Mary L. Reynolds, a divorced and not remarried woman
and upon distruction of said premises, that this instrument will act as an
assignment of the proceeds of any insurance or other recovery by the said Mary L. 
 woman
Reynolds, a divorced and not remarried to AMERICAN GENERAL FINANCE, INC., a
corporation, for the balance of the dollar amount assigned and conveyed to
AMERICAN GENERAL, FINANCE, INC., a corporation, by this instrument, being calculable
by the number of monthly payments as called for in the mortgage and
accompanying promissory not for the said 92 month period of this assignment.
 2) Party of the first part covenents, represents and warrants as to
the mortgage and note sold and assigned hereunder:
 a) that said mortgage is a good and valid instrument and constitutes
a valid lien against the real property described therein:
 b) that party of the first part is vested with a full and absolute
title to said mortgage and note and has authority to assign and transfer the
same, which is presently free and clear of all encumbrances.
 c) There are no defaults existing at the present time under any of the
convenents contained in said mortgage and note:
 d) there are no defenses against said mortgage and note; and the
mortgage and note were not originated in a manner which violated, or now
violates any Federal, State or Local Laws, ordinances, regulations, or rulings
including, without limitations, Federal and State truth in lending laws and
any other consumer protection Laws, all Federal and State equal credit
opportunity Laws, any applicable State usury Laws.
 e) There are no undisclosed agreements between any of the mortgagors
and the mortgages concerning any facts or conditions for the past, present
or the future which might in any way effect the obligations of the mortgagors
to make timely payments thereon.
 f) The total present unpaid balance of the mortgage is Thirty Nine Thousand
 ($39,444.10)
Four Hundred Forty Four and 10/100 DOLLARS, and the next monthly mortgage
payment on the mortgage loan is the amount of Three Hundred Fifty Nine and 80/100
($359.80) DOLLARS and is due and payable on the 5th day of June 
____________. 19 91 .
 g) Owner does not in any ordinary course of business regularly extend
or arrange for extension of consumer credit.
 3) AMERICAN GENERAL FINANCE, INC., a corporation, party of the second
part agrees to service the mortgage and note so long as any installment due to
AMERICAN GENERAL FINANCE, INC., a corporation, remains unpaid; and to exert
reasonable collection efforts to insure that the mortgagors make timely payments
due unto the mortgage note. Party of the first part does hereby designate
party of the second part as its agent for collection of monies due to the party
of the first part in connection with full payoff of the mortgage loan and note.
Should the mortgage, or their assignees, make all payments due to party of
the second part in a timely manner during the said 92 months of this
assignment, at the conclusion of such 92 month period, AMERICAN
GENERAL FINANCE, INC., a corporation, shall execute and absolute assignment
of such mortgage and note back to the party of the first part and advise the
mortgagors under the mortgage, or their assignees, to make the payments under
the said mortgage and note due in the future to the party of the first part.
 4) Party of the first part agrees to endemnify and save AMERICAN GENERAL
FINANCE, INC., a corporation, harmless from and against and all loss, damage,
and liability, and expense (including reasonable attorney's fees and cost of
litigation) sustained or incurred by AMERICAN GENERAL FINANCE, INC., a
corporation, arising out of or based upon, the inaccuracy or breach of any
warranty or representation made by the party of the first part hereunder to
AMERICAN GENERAL FINANCE, INC., a corporation, under this agreement.
*702
 5) Time shall always be of the essence of this agreement and this agreement
shall ensure and be binding upon the respective heirs, representatives,
administrators, successors and assigns, of the parties hereto.
 WITNESS our hands and seals this 15th day of May .
19 91 .
 
 _________________________
 Mary L. Reynolds
 _________________________
 Party of the Second Part
 BY: 
STATE OF Alabama 
COUNTY OF Baldwin 
 Before me, the undersigned, a Notary Public in and for said State and
County, personally appeared Mary L. Reynolds 
___________________________ whose names are signed to the foregoing instrument
and who are known to me, who after, by me, being first duly sworn on oath did
depose and say that being informed of the contents of said conveyance, they
executed the same voluntarily on the day the same bears date.
 Given under my hand and notorial seal on this the 15th day of
 May , 19 91 .
 
 Notary Public, State of Alabama at Large
THIS INSTRUMENT PREPARED BY:
American General Finance, Inc.
Post Office Box 1183
Daphne, Alabama 36526
NOTES
[1] Some filings in the record spell these names as "Ray Sherrin" and "Leslie Sherrin."
[2] The title company sought the amount of the Sherrins' payoff on the note because the Sherrins were selling the house they had purchased from Reynolds.
[3] Reynolds later amended her complaint to add a fraud claim based on the allegation that the defendants had "engaged in the fraudulent practice of `flipping.'"
[4] See note 6.
[5] Section 6-2-3 provides:

"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting fraud, after which he must have two years within which to prosecute his action."
[6] Because this action was filed before March 14, 1997, the applicable standard for determining when the two-year period began to run is that provided by Hicks v. Globe Life & Accident Insurance Co., 584 So.2d 458, 463 (Ala.1991), overruled by Foremost Insurance Co. v. Parham, 693 So.2d 409 (Ala.1997).
[7] Because the Lotts, the plaintiffs in Lott v. Tarver, filed their action before March 14, 1997, we applied the "justifiable reliance" standard to their case. See Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997); and see note 6.
[8] The Court of Civil Appeals distinguished Lott from this case on the ground that "the loan documents executed by [American General] and Reynolds did not state the interest rate or the total amount to be repaid by Reynolds." Reynolds v. American Gen. Fin., Inc., 795 So.2d at 685. In fact, the difference is that in Lott the purchasers did not receive a copy of the mortgage. Instead, the plaintiffs were presumed, by operation of the recordation statute, to know of the facts that would have alerted a reasonable person to the existence of the fraud. In this case, the facts that put Reynolds on notice were in her actual possession from 1988 and 1991, respectively.
[9] Reynolds also argues that she did not have actual knowledge of the fraud until January 1996, when she was told by the accountant, whom she had asked to examine the loan documents, that the interest rate charged on the loans was more than 20%. This argument is without merit. As we stated in McGowan, "it is the knowledge of such facts that would have alerted a reasonable person to the existence of a potential fraud, and not actual knowledge of the fraud itself, that determines whether the question of the tolling of the limitations period in a fraud case can be decided as a matter of law." 631 So.2d at 845 (second emphasis added).